**Aimee K. WILLIAMS, Respondent/Cross–Appellant,**

v.

**TRANS STATES AIRLINES, INC., Appellant/Cross–Respondent.**

**No. ED 91286.**

Missouri Court of Appeals, Eastern District, Division One.

March 24, 2009.

Application for Transfer to Supreme Court Denied April 28, 2009.

858

Robert W. Stewart, Christopher M. Sanders, The Lowenbaum Partnership, LLC, St. Louis, MO, Captain David J.A. Haynes, III, Trans States Airlines, Inc. Bridgeton, MO, for Appellant/Cross Respondent Trans States Airlines, Inc.

Jonathan C. Berns, Michelle D. Neumann, Dobson, Goldberg, Moreland & Berns, St. Louis, MO, for Respondent/Cross Appellant Aimee K. Williams.

KURT S. ODENWALD, Presiding Judge.

### Introduction

Trans States Airlines, Inc. (TSAI) appeals from the trial court's judgment on the jury's verdicts in favor of Aimee Williams (Williams) for both actual and punitive damages in Williams's retaliatory discharge suit against TSAI. We find no error and affirm. Conversely, Williams cross-appeals from the trial court's judgment of attorneys' fees and costs. We grant, in part, Williams's cross-appeal on attorneys' fees, and affirm the trial court's judgment regarding costs.[1]

### Background

Williams was hired by TSAI as a probationary flight attendant on August 5, 2002. New flight attendants, like Williams, were required to undergo a six-month probationary period before they were hired as a regular employee. During the probationary period, flight attendants often worked on "reserve" and were assigned to work on flights that went unassigned to more senior flight attendants. Probationary flight attendants also worked "airport reserve" where they were stationed at the airport for a designated amount of time, and were "on call" to work a flight if a need developed.

Probationary flight attendants are not members of the union, and are not eligible to receive union benefits until their probationary period is complete. The collective bargaining agreement between TSAI and the International Brotherhood of Teamsters for flight attendants addresses the rights of probationary flight attendants, and notes: "A flight attendant shall be on probation for 6 months of active service with the company as a flight attendant. During the probationary period, the company may discipline or discharge the flight attendant at its sole discretion with no resort to the grievance procedure."

Williams's direct supervisor at TSAI was In–Flight Manager Sharon Rosa (Rosa). Williams also reported to Rosa's superior, Director of In–Flight Service Shonn Clark (Clark).

### Sexual Harassment Complaint

On November 22, 2002, during her probationary period, Williams was assigned an overnight flight with pilot Raymond Dougher (Dougher). Williams alleges that Dougher engaged in unwelcome sexual conduct toward her during the overnight layover on November 22. Williams testified that she first reported Dougher's conduct on December 1, 2002, to Captain Randy Zehnder (Zehnder), the assistant chief pilot. Zehnder advised Williams to report the conduct to Clark. Williams addressed the incident with Rosa because she dealt more with Rosa than Clark. Rosa also advised Williams to report her sexual harassment claim to Clark. Williams reported the sexual harassment to Clark and filed a written complaint about the incident on December 6, 2002.

After Williams reported the incident to Clark, he forwarded the written complaint

1. Williams filed a motion seeking an award of attorneys' fees for work performed in connection with this appeal. We grant Williams's motion and award attorneys' fees in the amount of $14,701.75.

to Chief Pilot James Michael White (White) in accordance with TSAI's investigation policy. Under TSAI company policy, it was White's responsibility, as chief pilot, to investigate sexual harassment complaints made against pilots under his supervision. After receiving the complaint, White began investigating the claims made by Williams against Dougher. White met with Dougher and explained the nature of the allegations against him. Dougher emphatically denied the allegations. Also as part of the investigation, White interviewed Ron Bawden (Bawden), who was another member of the flight crew on the night in question. Bawden denied witnessing any sexual comments from Dougher to Williams. At the conclusion of the investigation, White determined he could not prove Williams's allegations took place.

After the investigation was completed, White learned that both Dougher and Bawden failed to tell the truth during their interviews. Dougher later admitted that he engaged in sexual conduct toward Williams, and Bawden later "remembered" that he heard Dougher make sexual comments toward Williams. TSAI did not discipline or take any action against Dougher or Bawden after learning that they were untruthful during the investigation. While Dougher left TSAI for another job prior to TSAI discovering his untruthfulness, Bawden continued to work for TSAI, at least up until the time of trial.

*Williams's Performance and Disciplinary History*

Williams's performance and disciplinary history was hotly debated at trial. TSAI alleged a number of disciplinary problems. Williams asserts that virtually all of the alleged misconduct occurred after she made her complaint of harassment.

Williams testified that prior to filing her harassment complaint, she had not re-ceived any written warnings or other discipline from TSAI. In fact, in October and November 2002, Clark sent Williams two letters thanking her for working extra overtime. Clark also sent Williams a letter congratulating her on a customer compliment in November 2002. On each of these occasions, Clark awarded Williams a roundtrip companion pass certificate.

The only specific incident that TSAI alleges occurred prior to Williams's sexual harassment complaint was an incident on November 5, 2002, where Williams called in sick to work and later was seen at a bar. Williams testified that she only called in sick once, and admitted that she did go to a bar later that day. Williams testified that she was never verbally counseled regarding that incident, and did not receive any written disciplinary action for that occurrence.

TSAI presented several other alleged incidents of Williams's poor work performance, which all occurred after Williams made her sexual harassment complaint. The first incident occurred on December 22, 2002, when TSAI claimed Williams was unable to fly on reserve due to her consumption of alcohol within twelve hours of a flight. While federal air regulation prohibited consuming alcohol within eight hours prior to duty, TSAI's policy prohibited employees from drinking twelve hours prior to reporting for duty. Williams testified that early on the morning of December 22, 2002, Crew Scheduling called her requesting that she report for a flight later that day. Williams testified that she initially told Crew Scheduling that she was unable to fly because she had been drinking. However, after waking up and gathering her thoughts, Williams called Crew Scheduling back and informed them that she was able to report to work because her last drink was more than twelve hours from the start of the flight. Williams re-

ported to the flight as assigned and the flight was not late. Williams testified that while it was a violation of the rules for her to be drinking that night, she did not receive any verbal counseling regarding the incident, nor did she receive any written discipline.

TSAI also alleged Williams caused flight delays on December 26 and 28, 2002, and January 14 and 24, 2003. Williams did not recall any of those incidents. Rosa testified that she did not issue Williams any discipline for the alleged flight delays, although she believed she put a form letter in Williams's mailbox after each incident. Rosa did not produce copies of any letters allegedly given to Williams regarding the flight delay. Williams asserted she never received written discipline for causing flight delays, nor did anyone inform her that she had caused any flight delays.

Williams testified that her first written discipline was for failing to check out with Crew Scheduling on January 17, 2003. Williams understood that flight attendants were required to call Crew Scheduling after finishing flying for the day so that Crew Scheduling could ensure the flight attendant was not needed on any other flights or for airport reserve. Williams testified that she did not check out on January 17 because she had worked an overnight trip out of town. Williams testified that flight attendants are not required to check out with Crew Scheduling for overnight trips. After receiving the written discipline, Williams wrote a response indicating she was on an overnight trip on the night of January 17. After she presented her response, she did not hear anything else from TSAI regarding the incident.

TSAI also alleged that Williams was unavailable for airport reserve and later was found in the airport Starbucks. Williams testified she was never verbally counseled or issued any written discipline for not being available while on airport reserve. Williams recalled one incident where she was on airport reserve and was in the airport Starbucks, but testified that as long as she was within the airport, she did not violate any policies. When Williams was located at the Starbucks, she was asked to cover a flight, was able to cover the flight, and the flight was not late.

Williams testified that no one ever told her that she was doing a bad job or that her job was in jeopardy. Williams testified that she never received any write-ups, written discipline, or verbal counseling for causing flight delays. Nor had she ever been disciplined for not being available to fly on reserve.

On January 29, 2003, five days before her probationary period was to expire, Rosa and Clark called a meeting with Williams at which time they terminated her employment with TSAI.

*Williams's Lawsuit and Trial Against TSAI*

After her termination, Williams timely filed a complaint with the Missouri Commission on Human Rights (MCHR), alleging sexual harassment, sex discrimination, and retaliation. On July 30, 2004, the MCHR issued Williams a Notice of Right to Sue. On August 27, 2004, Williams filed her Petition in the Circuit Court of St. Louis County alleging sexual harassment, sex discrimination, and retaliation in violation of the Missouri Human Rights Act (MHRA)[2] against TSAI, Dougher, Clark, and Rosa. Williams also included a count in

---

2. The MHRA is codified as Sections 213.010 to 231.137. Unless otherwise indicated, all statutory references are to RSMo 2000.

her Petition for assault and battery against Dougher.

Prior to trial, Williams settled her claims against Dougher, voluntarily dismissed all claims against Clark and Rosa, and dismissed her sexual harassment claim against TSAI. Williams tried her claim for retaliation against TSAI before a jury in a bifurcated trial, first addressing liability and actual damages, and then addressing the issue of punitive damages. At trial, both Williams and TSAI presented a variety of evidence and elicited testimony from a number of parties involved in the case. Several issues presented at trial are at issue in this appeal.

First, Williams presented evidence at trial that a prior TSAI employee, Zeb Habib Ray (Ray), also complained of sexual harassment by a pilot and was later terminated. Evidence was presented that on January 27, 2000, Ray, a female flight attendant, complained that a male pilot sexually harassed her. After an investigation revealed that Ray made false statements during the sexual harassment investigation, Clark suspended Ray on February 2, 2000. TSAI, specifically Clark, terminated Ray's employment two weeks later, for making a false harassment complaint. Clark testified that, as the director of in-flight service, it was his decision to terminate Ray's employment. Clark further testified that to his knowledge, Williams was the next person to file a sexual harassment complaint against a pilot, and that she, too, was fired less than sixty days after her sexual harassment complaint was made. Clark did not know of any other women to file a sexual harassment complaint since Williams.

TSAI objected to the admission of the evidence of Ray's termination at trial, alleging Ray and Williams were not similarly situated because Ray was not a probationary flight attendant, the two employees had a different status with the company, and each was accused of different misconduct. The trial court overruled TSAI's objection and admitted the evidence.

After TSAI terminated Ray's employment, Ray filed a complaint in the United States District Court for the Eastern District of Missouri against TSAI, alleging she was harassed on the basis of her sex, religion, national origin, color, and race, and that she was discharged in retaliation for complaining about the alleged harassment. The United States District Court granted summary judgment for TSAI on Ray's claims, noting that not only did Ray fail to specifically allege TSAI retaliated against her in either of the two counts of her complaint, but that she failed to present evidence that created a dispute of material fact with respect to the reason of her discharge. Applying the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the federal district court found Ray failed to establish a causal link between her complaints and her termination.

TSAI attempted to introduce the federal district court opinion into evidence. The trial court ruled that while TSAI could question witnesses about the outcome of the Ray case, the judge's written opinion would not be admitted into evidence.

Second, TSAI introduced the issue of Williams's psychological medical treatment records and the report from TSAI's expert witness, Dr. Wayne Stillings (Dr. Stillings). During discovery, Williams indicated that she suffered from stress, anxiety, and depression following her termination from TSAI. Williams disclosed several medical professionals from whom she sought treatment and counseling for those issues. As a result, in June 2006, TSAI retained Dr. Stillings, a psychiatrist, to conduct a mental examination and psycho-

logical testing of Williams. Prior to trial, Williams filed a Motion in Limine seeking to exclude testimony from Dr. Stillings regarding Williams's mental condition or her claims for emotional distress damages because she was only asserting a "garden variety" emotional distress claim. At trial, the trial court excluded evidence offered by TSAI of Williams's treating physicians regarding her psychological treatment. The trial court also excluded Dr. Stillings' testimony, expert report, and his curriculum vitae.

Finally, during the punitive damages phase of the trial, TSAI made an offer of proof, asserting that if Clark were permitted to testify to the remedial measures TSAI had taken since the incident in 2003, he would testify that TSAI made changes to the flight delay documentation process and the probationary review process, TSAI was in the process of revising the employee handbook, and TSAI had adopted a more sophisticated documentation and computerized retention process to keep better track of documentation. The trial court sustained Williams's objection that the evidence was irrelevant and rejected TSAI's offer of proof.

Both at the close of Williams's evidence and the close of all evidence, TSAI filed a Motion for Directed Verdict, which the trial court overruled. At the completion of both portions of the trial, the jury returned a verdict for Williams awarding her $53,500 in actual damages and $325,000 in punitive damages. On February 7, 2008, the trial court entered its Judgment according to the jury's verdicts.

TSAI filed its Motion for Judgment Notwithstanding the Verdict and/or For a New Trial on February 29, 2008. Williams filed a Motion for Attorneys' Fees on March 10, 2008, requesting the trial court award her $146,244.50 in attorneys' fees. TSAI responded to Williams's Motion for Attorneys' Fees, arguing Williams was not the "prevailing party" on several of her claims, and requested the trial court award no more than $96,989.61 in attorneys' fees. Williams then filed a Bill of Costs on April 3, 2008, claiming $14,234.97 in costs. The trial court considered the parties' motions and entered an order on April 16, 2008, denying TSAI's motion and awarding Williams $3000 in costs and $80,000 in attorneys' fees.

TSAI filed a timely Notice of Appeal on April 25, 2008. Williams similarly filed a Notice of Appeal on May 5, 2008. This appeal follows.

## Discussion

### I. Trial Court Did Not Err in Denying TSAI's Motion for Judgment Notwithstanding the Verdict and/or Motion for New Trial.

TSAI alleges in its first point on appeal that the trial court erred in denying its Motion for Judgment Notwithstanding the Verdict and/or Motion for a New Trial (Motion for New Trial). TSAI asserts there was insufficient evidence to support the verdict and establish that Williams's sexual harassment complaint was a contributing factor in her discharge from TSAI. We disagree.

### Standard of Review

In reviewing a denial of a motion for judgment notwithstanding the verdict, we review the record to determine whether the plaintiff made a submissible case. *McBryde v. Ritenour Sch. Dist.*, 207 S.W.3d 162, 173 (Mo.App. E.D. 2006). To make a submissible case, a plaintiff must demonstrate that each and every fact essential to liability is predicated upon legal and substantial evidence. *Giddens v. Kansas City S. Ry. Co.*, 29 S.W.3d 813, 818 (Mo. banc 2000); *Kelly v.*

*Bass Pro Outdoor World, LLC,* 245 S.W.3d 841, 847 (Mo.App. E.D.2007). "Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of fact can reasonably decide the case." *Kelly,* 245 S.W.3d at 847. In determining whether the evidence was sufficient to support the jury's verdict, we review the evidence in the light most favorable to the result reached by the jury, giving the plaintiff the benefit of all reasonable inferences and disregarding evidence and inferences that conflict with the verdict. *Giddens,* 29 S.W.3d at 818; *Jungerman v. City of Raytown,* 925 S.W.2d 202, 204 (Mo. banc 1996). A jury verdict will not be overturned unless there is a complete absence of probative facts to support the jury's verdict. *Giddens,* 29 S.W.3d at 818. Where reasonable minds can differ on the question before the jury, this Court will not disturb the jury's verdict. *Payne v. Cornhusker Motor Lines, Inc.,* 177 S.W.3d 820, 832 (Mo.App. E.D.2005).

■ Alternatively, we review the trial court's denial of TSAI's Motion for New Trial for "abuse of discretion." *Gallagher v. DaimlerChrysler Corp.,* 238 S.W.3d 157, 162 (Mo.App. E.D.2007). An "abuse of discretion" occurs when the trial court's ruling is "clearly against the logic of the circumstances before the court at the time and is so unreasonable and arbitrary that is shocks one's sense of justice and indicates a lack of careful consideration." *Id.* We will reverse the trial court's decision only if we find a substantial or glaring injustice. *Id.*

### Analysis

■ The Missouri Human Rights Act (MHRA) states that it is an unlawful dis-

criminatory practice to "retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by this chapter or because such person has filed a complaint ... pursuant to this chapter." Section 231.070. When reviewing cases under the MHRA, appellate courts are guided by both Missouri law and any federal employment discrimination law consistent with Missouri law. *Daugherty v. City of Maryland Heights,* 231 S.W.3d 814, 818 (Mo. banc 2007). "Missouri's discrimination safeguards under the MHRA, however, are not identical to the federal standards and can offer greater discrimination protection." *Id.* at 818–19.

■ To make a submissible claim for retaliatory discharge under the MHRA, Williams was required to establish that: (1) TSAI terminated her employment, (2) her complaint of sexual harassment was a contributing factor in the termination, and (3) she sustained damage as a direct result of the conduct.[3] MAI 31.24; *See Thompson v. W.–S. Life Assurance Co.,* 82 S.W.3d 203, 207 (Mo.App. E.D.2002).

The parties do not dispute that the first and third elements were met as it is clear TSAI terminated Williams's employment and that Williams sustained damage as a result of her termination. This case turns on the second element—whether Williams's complaint of sexual harassment was a "contributing factor" in her termination. The Missouri Supreme Court set forth the "contributing factor" analysis in *Daugherty,* noting that nothing in the "statutory language of the MHRA requires a plaintiff to prove that discrimination was a substantial or determining factor in an

---

**3.** Jury Instruction No. 6 instructed the jury to find for Williams if they believed: "First, [TSAI] terminated [Williams]; and Second, [Williams's] complaint of sexual harassment

relating to [Dougher] was a contributing factor in such termination; and Third, as a direct result of such conduct, [Williams] sustained damage."

867

employment decision; if consideration [of a protected characteristic] contributed to the unfair treatment, that is sufficient." *Daugherty*, 231 S.W.3d at 819. A "contributing" factor has been defined as one "that contributed a share in anything or has a part in producing the effect." *McBryde*, 207 S.W.3d at 170. The Missouri Supreme Court recently applied its analysis in *Daugherty* to claims of retaliation made under the MHRA, and expressly held that retaliation for opposing discrimination under the MHRA, like other forms of discrimination, is proved by showing elements required by the MHRA, rather than by reference to cases such as *McDonnell Douglas* analyzing violations of federal law. *Hill v. Ford*, 277 S.W.3d 659 (Mo. 2009).

■ Williams alleges her sexual harassment complaint against Dougher was a "contributing factor" in her termination. TSAI claims Williams was not discharged for making her complaint, but instead was terminated based on her record of poor job performance and violating company policy during her probationary period. Viewing the evidence in the light most favorable to the plaintiff, we find Williams's retaliatory discharge claim was predicated on both legal and substantial evidence. Williams presented sufficient evidence from which a jury reasonably could find that her sexual harassment complaint was a "contributing factor" in her termination.

■ Like most employment discrimination cases, which are inherently fact-based and often depend on inferences rather than on direct evidence, Williams's case does not involve direct evidence. *See Daugherty*, 231 S.W.3d at 818. Direct evidence "shows a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding that an illegitimate criterion actual-ly motivated the employment decision." *Id.* at 818 n. 4. However, direct evidence is not common in discrimination cases because "employers are shrewd enough to not leave a trail of direct evidence." *Id.* In these cases, circumstantial evidence may be used to prove the facts necessary to sustain a recovery. *Fabricor, Inc. v. E.I. DuPont de Nemours & Co.*, 24 S.W.3d 82, 94 (Mo.App. W.D.2000). Williams relies on circumstantial evidence to prove her claim.

First, Williams presented evidence that she had a good work record prior to making a sexual harassment complaint, including positive feedback from management. Clark testified that, prior to Williams making her complaint of sexual harassment, he had no knowledge of any performance problems or disciplinary actions regarding Williams's employment with TSAI. In fact, prior to her complaint, Clark sent Williams several positive letters regarding her work performance. On October 31, 2002, Clark sent a letter to Williams thanking her for volunteering to work on her scheduled days off. Clark sent Williams a similar letter in November 2002, again thanking her for volunteering to work on her scheduled days off. On November 6, 2002, Clark sent Williams a letter because the company received a compliment from a customer that Williams had provided good customer service. On each of these occasions, Clark awarded Williams a roundtrip companion pass certificate. This evidence lends support to Williams's assertions that her alleged performance deficiencies were untrue or pretexual.

Second, while TSAI asserts that Williams was terminated due to her violation of company policies and her poor overall job performance, Williams presented evidence that the majority of the alleged performance issues occurred *after* her sexual harassment complaint. First, TSAI

alleges that on December 22, 2002, Williams consumed alcoholic beverages while on reserve. Williams presented evidence that she reported to work because her last drink was more than twelve hours before the flight, and that she made the flight that day. TSAI also alleges Williams caused four flight delays in four weeks, specifically on December 26 and 28, 2002, and January 14 and 20, 2003. While TSAI claims Williams was given a form letter for each flight delay, no such letters were admitted into evidence at trial. TSAI claims that copies of the letters were not retained by management or placed in Williams's personnel file. The only evidence that Williams had received the letters was Rosa's testimony that placing such letters in the employees' mailboxes was her standard procedure, and that she must have done so in these cases. No other evidence was introduced regarding TSAI's communication to Williams of her alleged deficient performance in causing flight delays. At trial, Williams questioned the evidence indicating she caused any of the alleged delays. Two dates in particular raised additional suspicions. Regarding the alleged delay on December 28, 2002, Williams produced evidence that Rosa's flow sheet showed a "fueling delay code" for the reason the flight was delayed. Rosa's handwritten notation on the page was the only indication the delay was caused by a flight attendant. With regard to the January 14, 2003 flight delay, Rosa's flow sheet had a code for "waiting for inbound flight attendant." Rosa admitted this notation could indicate an attendant is delayed because an incoming flight bringing that attendant to the airport was delayed. Finally, countering TSAI's allegations that Williams failed to check out with Crew Scheduling on January 17, 2003, Williams presented evidence that she was not expected or required to check out because she had flown on an overnight flight that day. The only performance issue arising prior to Williams's sexual harassment complaint was an incident where Williams called in sick to work on November 5, 2002, but later was seen at a bar. While Williams admitted this incident, TSAI never counseled Williams regarding the occurrence, nor did she receive any written or oral discipline. This evidence provided a sufficient basis from which a jury could find that the performance issues raised by TSAI were untrue or pretextual.

Third, despite the severity and frequency of Williams's alleged misconduct, TSAI only once documented any misconduct or disciplined Williams. As discussed above, Williams was never counseled or disciplined for her conduct of calling in sick and then going to the bar. Williams received no written discipline or counseling when she allegedly was drinking while on flight reserve on December 22, 2002, even though TSAI deemed this offense serious enough to terminate three other non-probationary flight attendants for the same offense. As previously discussed with regard to the alleged flight delays, TSAI was unable to produce any disciplinary letters from management files or Williams's personnel file. Despite the allegations of numerous performance deficiencies, TSAI introduced only one warning letter into evidence. That letter related to Williams's failure to check out with Crew Scheduling on January 17, 2003, a claim which Williams denied and a claim to which Williams responded. The evidence showed no response made by TSAI to Williams's denial of the alleged deficient performance.

Fourth, Williams noted the timing of her termination in relation to her complaint of sexual harassment. While the "requisite causal connection may be proved circumstantially by showing the discharge followed the protected activity so closely in

time as to justify an inference of retaliatory motive," generally "more than a temporal connection between protected activity and an adverse employment action is required to show a genuine factual issue on retaliation exists." *Buettner v. Arch Coal Sales Co., Inc.,* 216 F.3d 707, 715–16 (8th Cir.2000); *see also Barekman v. City of Republic,* 232 S.W.3d 675, 682 (Mo.App. S.D.2007) (holding "the closeness in time between the [plaintiff's] complaint and the [defendant's] demand for his resignation or firing supports an inference of retaliatory motive"). Not only did Williams present evidence that she was terminated from her employment less than sixty days after she filed her sexual harassment complaint, but she also presented evidence that it is highly unusual for a probationary flight attendant to progress to the last week of probation, only then to be terminated. These facts provide further support for Williams's contention that sufficient evidence was presented to make a submissible case for retaliatory discharge, and that sufficient facts existed to support the jury's verdict.

As further support for her contention that the timing of her firing was probative of TSAI's retaliatory intent, Williams presented evidence that another flight attendant, Ray, also was terminated shortly after filing a sexual harassment complaint against a pilot at TSAI. Williams suggests that the facts surrounding Ray's termination is circumstantial evidence that Williams's sexual harassment complaint was a contributing factor in her termination. Williams presented evidence that Clark terminated Ray's employment with TSAI less than two weeks after Ray made a sexual harassment complaint. Clark is the person who terminated Williams after she made her complaint of sexual harassment. While not dispositive of Williams's claim by itself, we find that evidence of the close proximity in time between the sexual harassment complaints made by two female flight attendants and their subsequent termination by the same male supervisor is relevant evidence which a jury could find supports Williams's claim of retaliatory discharge.

Viewing the evidence in the light most favorable to Williams, we find sufficient evidence was presented to make a submissible case of retaliatory discharge. While the jury could have reviewed the evidence and concluded that Williams was terminated due to poor work performance, when the evidence is viewed in the light most favorable to Williams, giving her the benefit of all reasonable inferences, we find that sufficient evidence was presented to allow the jury to conclude that Williams was fired in retaliation for making her claim of sexual harassment against Dougher. It is well settled that "[w]here reasonable minds can differ on the question before the jury, we will not disturb the jury's verdict." *See Payne,* 177 S.W.3d at 832. Accordingly, we find Williams presented a submissible case and the trial court did not err in denying TSAI's Motion for New Trial. TSAI's first point is denied.

## II. Trial Court Did Not Err in Submitting Punitive Damages Claim to the Jury.

In its second point on appeal, TSAI asserts the trial court erred in submitting Williams's punitive damages claim to the jury because the jury instructions were not supported by the evidence and Williams failed to present evidence of TSAI's evil motive.

### Standard of Review

 Whether there is sufficient evidence to support an award for punitive damages is a question of law, which we review *de novo.* *Hoyt v. GE Capital*

*Mortgage Serv., Inc.,* 193 S.W.3d 315, 322 (Mo.App. E.D.2006). When reviewing whether a plaintiff has made a submissible case for punitive damages, an appellate court reviews the evidence in the light most favorable to submissibility, while disregarding all adverse evidence inferences. *Kelly,* 245 S.W.3d at 849. "A submissible case is made if the evidence and the inferences drawn therefrom are sufficient to permit a reasonable juror to conclude that the plaintiff established with convincing clarity—that is, that it was highly probable—that the defendant's conduct was outrageous because of evil motive or reckless indifference." *Id.*

■■■■ To determine whether malice existed as a basis of an award of punitive damages, we examine whether the defendant did a wrongful act intentionally and without just cause or excuse.[4] *Hoyt,* 193 S.W.3d at 322. The defendant must not only have intended to do the act which is ascertained to be wrongful, but the defendant must have known it was wrongful when the act was done. *Id.* In order to justify punitive damages, there must be some element of wantonness or bad motive. *Id.* If a defendant intentionally does a wrongful act, and knows at the time the act was wrongful, it is done wantonly and with a bad motive. *Id.* An evil intent may also be implied from reckless disregard of another's rights and interests. *Id.* In cases involving intentional torts, such as retaliatory discharge, "[i]t is not so much the commission of the intentional tort as the conduct or motives—the defendant's state of mind—which prompted its commission that form the basis for a punitive damage award." *Burnett v. Griffith,* 769 S.W.2d 780, 787 (Mo. banc 1989). Only evidence that tends to support the submis-

sion of the claim for punitive damages should be considered. *Hoyt,* 193 S.W.3d at 323.

*Analysis*

■■■ While Section 213.111.2 of the MHRA allows a trial court to award a plaintiff actual and punitive damages, TSAI argues that Williams failed to make a submissible case for punitive damages. We disagree. Our review of the facts in the light most favorable to submission shows that Williams presented sufficient evidence to submit the issue of punitive damages to the jury. We find that the evidence and the inferences drawn therefrom are sufficient to permit a reasonable juror to conclude that Williams established with convincing clarity that TSAI's conduct was outrageous because of evil motive or reckless indifference.

Our analysis of the submission of punitive damages to the jury is aided by our review of the requirements to prove a claim for retaliation under the MHRA. As was made clear by the Supreme Court in *Hill v. Ford,* 277 S.W.3d 659 (Mo.2009), to prove a claim of retaliation under Missouri state law, a plaintiff need only prove the elements required by the MHRA. In this case, Williams was required to submit evidence allowing a reasonable fact-finder to conclude that making her claim of sexual harassment was a contributory factor in TSAI's decision to terminate her employment, nothing more. Evidence that meets this burden may potentially allow a reasonable fact-finder also to conclude that TSAI acted with evil motive or reckless indifference when it retaliated against Williams. Proof offered to support an employee's underlying substantive claim and the employee's additional claim for punitive dam-

---

4. Jury Instruction No. 9 instructed the jurors to find TSAI liable for punitive damages if they "believe the conduct of [TSAI], as sub-mitted in Instruction Number 4 was outrageous because of [TSAI's] evil motive or reckless indifference to the rights of others."

ages need not be mutually exclusive, and often is not.

Our review of the record shows that much of the same evidence supporting Williams's retaliatory discharge claim also supports her claim for punitive damages. First, Williams presented evidence that prior to filing her claim for sexual harassment, TSAI had no complaints regarding her job performance, but in fact had commended her on three separate occasions for outstanding service. Clark, the supervisor who terminated Williams, admitted that he had no knowledge of any performance problems regarding Williams or any disciplinary action taken against her prior to her making a complaint of sexual harassment. A reasonable fact-finder could infer from this evidence that Williams was a good employee, and that TSAI's complaints about her alleged poor performance were the result of Williams's sexual harassment complaint. A reasonable juror could find this evidence relevant in deciding whether TSAI fabricated or exaggerated Williams's alleged performance deficiencies, and if TSAI had an evil motive in terminating Williams's employment.

Second, Williams was able to show that, for the vast majority of the alleged performance deficiencies upon which TSAI claims to have based its decision to terminate Williams, there was little evidence supporting the alleged deficiencies other than the testimony of TSAI witnesses. From the evidence presented at trial, a jury could reasonably conclude that Williams was never verbally counseled regarding her job performance, and that except for one occasion, Williams did not receive any written discipline regarding any performance deficiencies or policy violations. Williams testified that she was unaware of any performance issues until her employment was abruptly terminated.

Furthermore, Williams presented evidence that would allow a jury to reasonably conclude that several of the alleged performance deficiencies were either untrue or pretextual. At trial, TSAI was unable to present direct evidence that the flight delays actually were caused by Williams. And, the one time Williams received a written discipline, Williams presented evidence from which a jury could conclude that her conduct did not violate any rules or protocol, but that the discipline resulted from a misunderstanding. These facts support an inference that Williams was discharged in retaliation for filing a claim of sexual harassment, and not for any performance deficiencies. Moreover, from this same evidence, a jury could reasonably conclude that TSAI attempted to intentionally and wrongfully attribute its termination of Williams on her alleged performance deficiencies, when in fact TSAI knew that Williams had been a good and reliable employee.

Finally, the circumstances surrounding the termination of another female flight attendant, shortly after she filed a complaint of sexual harassment not only supports Williams's claim for retaliatory discharge, but also supports Williams's claim for punitive damages. Clark, a male member of management, was the supervisor who terminated both female employees. Clark testified that Williams was the next employee after Ray to file a claim for sexual harassment, and that no employee since Williams filed any sexual harassment complaints. The evidence presented to the jury was that the same male supervisor fired the only two employees who filed claims of sexual harassment against TSAI between 2000 and the trial in 2008, and that he terminated their employment shortly after they informed TSAI management of their complaints of sexual harassment. While such evidence alone may not be dispositive of the issue of punitive dam-

ages, evidence of these facts could reasonably be viewed by the jury as support for Williams's argument that TSAI acted with intentional purpose of punishing female employees who filed sexual harassment complaints and to prevent future claims of harassment by female employees when TSAI fired Williams.

When we view all of the evidence in the light most favorable to Williams, we find that sufficient proof of malice existed to submit the issue of punitive damages to the jury based on TSAI's outrageous conduct. The evidence presented was sufficient for a reasonable juror to conclude that TSAI's conduct was outrageous because of its evil motive or reckless indifference. *See Kelly*, 245 S.W.3d at 849. TSAI's second point on appeal is denied.

### III. Trial Court Did Not Err in its Evidentiary Rulings.

In its remaining six points on appeal, TSAI alleges the trial court erred in making various evidentiary rulings. In its third and fifth points, TSAI argues that the court erred in admitting certain evidence. In its fourth, sixth, seventh and eighth points, TSAI argues that the trial court erred in excluding certain evidence.

### Standard of Review

The standard of review for each of TSAI's remaining points is the same. A trial court has considerable discretion in deciding whether to admit or exclude evidence at trial. *State v. Madorie*, 156 S.W.3d 351, 355 (Mo. banc 2005). We give great deference to the trial court's evidentiary rulings and will reverse the trial court's decision on the admission of evidence only if the court clearly abused its discretion. *Id.*; *Self v. Brunson*, 213 S.W.3d 149, 156 (Mo.App. E.D.2006). When reviewing for an "abuse of discretion" we presume the trial court's finding is correct, and reverse only when the ruling is "clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Sherar v. Zipper*, 98 S.W.3d 628, 632 (Mo.App. W.D.2003). Upon finding an abuse of discretion, this court will reverse only if the prejudice resulting from the improper admission of evidence is outcome-determinative. *State v. Barriner*, 34 S.W.3d 139, 150 (Mo. banc 2000).

Furthermore, in order to obtain a reversal based on the exclusion of evidence, an appellant must demonstrate the excluded evidence would have materially affected the merits of the cause of action. *Self*, 213 S.W.3d at 156. We will not find an abuse of discretion in excluding evidence "unless the materiality and probative value of the evidence were sufficiently clear, and the risk of confusion and prejudice so minimal, that we could say that it was an abuse of discretion to exclude it." *McCormack v. Capital Elec. Constr. Co., Inc.*, 35 S.W.3d 410, 416 (Mo. App. W.D.2001). Where evidence is excluded, the relevant issue is not whether the evidence was admissible, but whether the trial court abused its discretion by excluding it. *Woods v. Friendly Ford, Inc.*, 248 S.W.3d 665, 673 (Mo.App. S.D. 2008). A trial court is vested with broad discretion in determining whether to exclude or admit evidence at trial. *State v. Forrest*, 183 S.W.3d 218, 223 (Mo. banc 2006).

### 1. Admitting Evidence of Ray's Termination

In its third point on appeal, TSAI alleges the trial court erred in admitting evi-

dence relating to TSAI's termination of Ray to establish TSAI had a retaliatory animus against employees who make complaints of harassment. TSAI asserts the United States District Court for the Eastern District of Missouri granted summary judgment in favor of TSAI in the Ray case, and that Ray and Williams were not similarly situated for purposes of comparing the disciplinary treatment each received.

## Analysis

■■■■ TSAI argues that evidence of Ray's termination was irrelevant, and was further inadmissible because Williams and Ray were not similarly situated employees.[5] Williams asserts the evidence regarding Ray's termination was relevant to show TSAI's retaliatory animus toward women who file sexual harassment complaints, and that the two women were similarly situated to permit Williams to compare her termination to that of Ray. We agree with Williams.

■■■■ To be admissible, evidence must be both logically and legally relevant. *Woods,* 248 S.W.3d at 673. Evidence is deemed relevant when "the facts tend to prove or disprove facts at issue or corroborate other relevant evidence." *Id.* (internal quotations omitted). Determining whether proffered evidence is relevant is subjective and trial courts are afforded considerable discretion in their admissibility rulings. *Id.*

TSAI asserts the evidence regarding Ray's termination was inadmissible because Ray and Williams were not "similarly situated." We find this argument neither persuasive nor relevant.[6] In analyzing discrimination claims, federal courts "generally recognize that instances of disparate treatment can support a claim of pretext, but the plaintiff bears the burden of establishing that the employees are similarly situated in all relevant respects." *Young v. Am. Airlines, Inc.,* 182 S.W.3d 647, 654 (Mo.App. E.D. 2005) (internal quotations and emphasis omitted). Employees are deemed "similarly situated" when they are "involved in or accused of the same or similar conduct and are disciplined in different ways." *Id.*; *see Wheeler v. Aventis Pharm.,* 360 F.3d 853, 857 (8th Cir.2004). Under this federal analysis, Ray and Williams are not "similarly situated" because they were not involved in the same conduct yet disciplined in different ways. In fact, Williams premises the introduction of the evidence relating to Ray's termination on the assertion that Ray and Williams were involved in the same conduct and disciplined in the exact same way. As such, we do not see the relevance of TSAI's argument that Ray and Williams were not "similarly situated" as it relates to the admission of evidence regarding Ray's termination.

On the other hand, when considering this evidence in light of its probative value

---

5. TSAI also asserts the evidence regarding Ray was improperly admitted because TSAI was granted summary judgment in the federal district court case involving Ray's termination from TSAI. When evidence of Ray's termination was presented at trial, TSAI did not object on these grounds, but objected only on the grounds that the respective plaintiffs were not similarly situated. TSAI did not preserve this objection for appeal. *McHaffie v. Bunch,* 891 S.W.2d 822, 830 (Mo. banc 1995) (finding "[a] party who fails to object to testimony at trial fails to preserve the issue for appellate review," and "[a] party is not permitted to advance on appeal an objection different from that stated at trial.") TSAI separately claims the trial court erred in not admitting into evidence the written opinion issued in the federal district court case. That issue is addressed in TSAI's fourth point on appeal.

6. In its brief, TSAI later argues the correct analysis of the "similarly situated" standard.

to Williams's claim, evidence of Ray's discharge demonstrates that TSAI's treatment of Ray and Williams was sufficiently similar to be relevant to Williams's claim for retaliatory discharge. Both Ray and Williams were female flight attendants with TSAI. Both complained of sexual harassment by male pilots. Both women brought their harassment complaints against the respective pilots, and both women were terminated within sixty days of making their complaint. Furthermore, both women were terminated by the same male member of management, Clark. While TSAI attempts to draw a distinction between these two women based upon Williams's status as a probationary flight attendant, we find such distinction insignificant when considered in context with all the evidence presented and the similarities between the circumstances of Ray and Williams. Given these circumstances, the trial court could reasonably conclude that evidence of Ray's termination was relevant to Williams's claims and admissible.

Furthermore, even if we were to assume the evidence was improperly admitted, TSAI still would need to show the evidence was sufficiently prejudicial to warrant a new trial, which it failed to do. *Strong v. Am. Cyanamid Co.*, 261 S.W.3d 493, 521 (Mo.App. E.D.2007).

We do not find the trial court's decision to admit the evidence regarding Ray's termination "clearly against the logic of the circumstances" or "so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *See Sherar*, 98 S.W.3d at 632. TSAI's third point is denied.

*2. Exclusion of Written Federal Court Opinion*

TSAI alleges in its fourth point on appeal that the trial court erred in excluding from evidence the written opinion issued by the federal district court in the Ray litigation. TSAI argues that excluding the written opinion from evidence precluded TSAI from establishing that there was no retaliation against Ray, and allowed Williams to suggest to the jury that TSAI terminated Ray for making a legitimate sexual harassment complaint.

*Analysis*

█ While TSAI claims in its third point that the trial court erred in admitting evidence regarding Ray's termination, it argues in this fourth point that the trial court erred in excluding evidence of the federal court's written ruling on Ray's claims of sexual harassment and retaliation. TSAI argues that the trial court's exclusion of the federal court's written opinion prevented the jury from considering all of the evidence regarding Ray's termination. From what we can discern, the essence of TSAI's argument is that once the jury learned of Ray's allegations of retaliatory discharge against TSAI, fairness dictated that the jury be permitted to read the federal court's opinion and order granting summary judgment in favor of TSAI in order to have before it "all of the evidence" relating to Ray's claims. TSAI's argument raises serious implications of asking a lay jury to review and opine on the implications of a legal document containing conclusions of law based upon a shifting burden of proof that is not applicable to the case before them. We need not address these very real and serious concerns because TSAI's argument ignores the simple fact that, while it was not permitted to introduce into evidence the federal court's written opinion, TSAI was permitted, and did present evidence to the jury that Ray's charge of retaliatory discharge was dismissed by the federal court. TSAI presented Clark and Zehnder to testify before the jury that Ray's case was dismissed by the federal court. The jury

was presented with evidence that Ray did not prevail in her claim of harassment and retaliatory discharge. TSAI thus failed to demonstrate how the trial court abused its discretion precluding admission of the written opinion.

Furthermore, TSAI failed to demonstrate how the excluded evidence would have changed the outcome of the trial. *See Self,* 213 S.W.3d at 156. The trial court permitted TSAI to present evidence regarding the Ray case, excluding only the written court opinion. TSAI presented evidence that Ray's claims of harassment and retaliatory discharge were dismissed. Given these facts, TSAI failed to demonstrate how giving the jury the written court opinion would have changed the outcome of the trial. TSAI's fourth point on appeal is denied.

*3. Allowing Evidence of TSAI's Treatment of Other Employees for Untruthfulness in Investigation Process*

TSAI's fifth point on appeal focuses on the trial court's admission of evidence that TSAI did not discipline Dougher and Bawden when it was discovered that they were both untruthful during TSAI's investigation into Williams's sexual harassment complaint. TSAI argues that the trial court erred in allowing Williams to compare TSAI's failure to discipline Dougher and Bawden to TSAI's termination of Ray for making a false accusation of sexual harassment because such evidence is not relevant to establish TSAI's retaliatory animus against employees who make complaints of sexual harassment.

*Analysis*

TSAI's argues that evidence of its treatment of Dougher and Bawden is inadmissible, and that the trial court impermissibly expanded the "similarly situated" standard used in employment cases to find such evidence relevant to the issue of TSAI's

retaliatory animus. Williams argues that when analyzing the disparate treatment of employees, we are to be guided by a less rigorous standard of determining whether the employees are "similarly situated" as suggested by the Missouri Supreme Court in *Daugherty,* and that under this less rigorous standard, evidence of TSAI's treatment of Dougher and Bawden was admissible.

■■■ We are mindful of the changes brought by *Daugherty* and its admonition that "Missouri employment discrimination law in a post-MAI 31.24 environment should more closely reflect the plain language of the MHRA and the standards set forth in MAI 31.24 and rely less on analysis developed through federal caselaw." *Daugherty,* 231 S.W.3d at 819. However, because TSAI failed to prove that the evidence at issue was prejudicial or changed the outcome of the trial, we are not required to undertake the task of reviewing the admissibility of such evidence in a "post-MAI 31.24 environment." *See Self,* 213 S.W.3d at 156. While Williams was permitted to adduce evidence of TSAI's failure to discipline Dougher or Bawden, TSAI was similarly permitted to present the jury with evidence regarding the differing circumstances between Ray, Dougher and Bawden, including the noteworthy fact that Dougher was no longer employed by TSAI when it learned of his untruthfulness. TSAI has failed to demonstrate that the admission of evidence of TSAI's failure to discipline Dougher or Bawden was prejudicial, or affected the outcome of the case. As such, we find no evidence the trial court abused its discretion in permitting the evidence and TSAI's fifth point is denied.

*4. Excluding TSAI's Evidence of Mitigating Measures During Punitive Phase*

In its sixth point on appeal, TSAI asserts the trial court erred in refusing to

permit TSAI to present evidence of mitigating measures during the punitive damages phase of the trial because the evidence would have been significant in the jury's assessment of punitive damages.

### Analysis

■ It is difficult, if not impossible, to determine TSAI's legal basis for this point on appeal. Other than citing to the general statute setting forth the procedure for a bifurcated trial, TSAI presents no legal basis to support its claim that the trial court erred in excluding the evidence that TSAI has changed its procedures since 2003. TSAI offers a general argument that the trial court's refusal to allow evidence of changed procedures was prejudicial to TSAI, and that the evidence would have been significant to the jury's assessment of punitive damages. TSAI offers no detail regarding that alleged prejudice, or any explanation as to how the evidence would have affected the jury.

TSAI has not persuaded this Court that the trial court's exclusion of this evidence was an abuse of discretion that is "clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Sherar*, 98 S.W.3d at 632. TSAI's sixth point on appeal is denied.

5. *Exclusion of Evidence of TSAI's Expert and Williams's Medical Records*

■ TSAI's seventh and eighth points on appeal address the trial court's exclusion of evidence which TSAI sought to introduce to prove Williams did not suffer from emotional distress as a result of her termination. In its seventh point on appeal, TSAI claims the trial court erred by refusing to allow TSAI to examine its expert witness, Dr. Stillings, regarding Williams's emotional and mental state, and by excluding Dr. Stillings' testimony, medical report, and curriculum vitae from evidence. TSAI asserts that such evidence would have established that Williams suffered no psychiatric and emotional problems related to her employment and termination. In its eighth point, TSAI claims the trial court erred in excluding Williams's psychological treatment records from her treating physicians which contained no reference to emotional distress related to Williams's employment with or termination from TSAI. The trial court did not err in excluding this evidence.

### Analysis

Williams first raised the issue of her emotional distress in her pleadings and during discovery. TSAI appropriately obtained expert testimony from Dr. Stillings for the purpose of addressing Williams's claims of emotional distress. The trial court, however, excluded Dr. Stillings' testimony, expert report, and curriculum vitae after Williams abandoned her claims of emotional distress and proceeded to trial on claims of nothing more than the "garden variety" emotional distress. Williams argues that expert evidence relating to her emotional distress is inadmissible under the Missouri Supreme Court's decision in *State ex rel. Dean v. Cunningham*, 182 S.W.3d 561 (Mo. banc 2006), because she limited the recovery she sought from TSAI to only the "garden variety" emotional distress. We agree with Williams.

The *Dean* Court addressed the issue of whether the physician-patient privilege applied in an action seeking damages for emotional distress under the MHRA. *Id.* at 563. After noting that damages for humiliation and emotional distress in civil rights cases can be established either by testimony or inferred from the circumstances, the Court found that the plaintiff was protected by the physician-patient privilege if her claim was "only for such

emotional distress and humiliation that an ordinary person would experience under the circumstances or that may be inferred from the circumstances" and the plaintiff was not supporting her claim "by any evidence of medical or psychological treatment for a diagnosable condition." *Id.* at 569. While the issue before us does not involve the physician-patient privilege, the *Dean* Court noted that in cases involving "garden variety" emotional distress, that is emotional distress of a generic kind that an ordinary person would feel in such circumstances, "evidence of [the plaintiff's] medically or psychologically diagnosable mental or physical condition is irrelevant to the question of whether she suffered 'garden variety' emotional distress as a result of the incidents pleaded in her sex discrimination and sexual harassment claims. [The plaintiff's] particular past or present mental condition, in that respect, is not in controversy." *Id.* at 568. The Court further noted that those "garden variety" emotional issues are "generally in the common experience of jurors and do not depend on any expert evidence." *Id.*

We find *Dean* controlling here because Williams chose to not place her mental health in dispute at trial relating to any diagnosable condition. Williams chose to limit her claim only to those "garden variety" issues discussed in *Dean.* As such, any evidence regarding a "medically or psychologically diagnosable mental or physical condition" is irrelevant and the trial court was within its discretion to exclude evidence of the same. The fact that Williams chose to limit the issues submitted to the jury late in the litigation process does not alter the very clear dictates of *Dean.* TSAI has not provided any authority to the contrary. The trial court did not abuse its discretion in excluding Dr. Stillings' report and curriculum vitae. TSAI's seventh point is denied.

We find that *Dean* also controls our decision as to the trial court's ruling on the admissibility of medical records from Williams's personal physicians. Because Williams chose to prove her claims for "garden variety" mental damages only through inferences from the circumstances, she did not open the door that might have otherwise allowed expert medical evidence regarding her mental condition. *Dean,* 182 S.W.3d at 567. Because the medical records from Williams's personal physicians were irrelevant, the trial court did not abuse its discretion in excluding them. TSAI's final point is denied.

## Williams's Cross–Appeal

In addition to addressing and responding to TSAI's points on appeal, Williams also presents two points on a cross-appeal. In her two points, Williams argues that the trial court abused its discretion in limiting its award of attorneys' fees and costs.

## I. Trial Court Abused its Discretion in its Award of Attorneys' Fees.

In her first point on cross-appeal, Williams asserts the trial court abused its discretion in awarding her only $80,000 in attorneys' fees because she was entitled to recover additional fees under Section 213.111.2. Williams sought an award of $146,244.50 for attorneys' fees. Williams argues that TSAI conceded she was entitled to $96,989.61 in attorneys' fees, the evidence reflected she was entitled to attorneys' fees in an amount greater than $80,000, and the trial court failed to provide an explanation for awarding fees in an amount less than TSAI conceded.

### Standard of Review

The determination of reasonable attorneys' fees is in the sound discretion of the trial court. *Brady,* 213 S.W.3d at 114. This determination "shall not be

reversed unless the amount awarded is arbitrarily arrived at or is so unreasonable as to indicate indifference and a lack of proper judicial consideration." *Id.* The trial court is considered an expert on the issue of attorneys' fees such that, in the absence of a contrary showing, the trial court is presumed to know the character of the attorneys' services rendered in duration, zeal, and ability. *Nelson v. Hotchkiss*, 601 S.W.2d 14, 21 (Mo. banc 1980).

## Analysis

■ Just as a trial court is allowed to award actual and punitive damages under Section 213.111.2 of the MHRA, this section also permits the trial court to award "court costs and reasonable attorney fees to the prevailing party." Section 213.111.2; *see also Brady*, 213 S.W.3d at 114. While acknowledging the trial court's broad discretion in awarding attorneys' fees, Williams argues that this case presents the unusual circumstance in which the amount awarded was an abuse of discretion. In support of her argument Williams states that TSAI agreed Williams's counsel was entitled to $96,989.61 in fees, and that the trial court did not provide proper judicial consideration of the evidence when it awarded nearly $17,000 less than TSAI conceded was appropriate. TSAI asserts Williams was not entitled to additional attorneys' fees because Williams was not the prevailing party on most of her claims and that the fees asserted were grossly excessive and unreasonable. The record before us does not support a finding that TSAI affirmatively "conceded" that an award of $96,989.61 in attorneys' fees was appropriate. However, the analysis TSAI presented to the trial court regarding the amount of attorneys' fees to be awarded is convincing and persuasive. We find the trial court abused its discretion in awarding attorneys' fees in an amount less than calculated by TSAI.

While the determination of attorneys' fees lies within the discretion of the trial court, appellate courts have expressed a number of factors to consider including:

1) the rates customarily charged by the attorneys involved in the case and by other attorneys in the community for similar services; 2) the number of hours reasonably expended on the litigation; 3) the nature and character of the services rendered; 4) the degree of professional ability required; 5) the nature and importance of the subject matter; 6) the amount involved or the result obtained; and 7) the vigor of the opposition.

*Gilliland v. Mo. Athletic Club*, 273 S.W.3d 516, 523 (Mo. banc 2009). Because the trial court failed to enumerate its reasons for reducing Williams's request for attorneys' fees, we are left to speculate on the factors it considered in its award, which we will not do. However, the record before us contains the evidence TSAI presented to the trial court in its memorandum opposing Williams's motion for attorneys' fees. In its memorandum, TSAI thoroughly and systematically reviewed Williams's request for attorneys' fees, and argued for the removal of those fees TSAI felt were excessive, irrelevant, not pertinent to Williams's successful claim, or otherwise not taxable to TSAI.

■ TSAI first addressed the portion of Williams's attorneys' fees that were relevant only to Williams's unsuccessful claims, and argued against awarding any fees for said claims. As the MHRA specifically states, the trial court may award "reasonable attorney fees to *the prevailing party.*" Section 213.111.2 (emphasis added). Where the trial court has determined a plaintiff has prevailed, the court should award attorneys' fees "unless special circumstances would render such an award

unjust." *Brady,* 213 S.W.3d at 115. This exception is extremely narrow and is applied "only in unusual circumstances and then only upon a strong showing by the party asserting it." *Id.* The United States Supreme Court has noted that where a plaintiff has achieved only partial or limited success, "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The Court noted that this is true even where a plaintiff's claims are "interrelated, non-frivolous, and raised in good faith." *Id.* Because Williams was "successful" only on her retaliatory discharge claim, TSAI argues that Williams should not be permitted to recover attorneys' fees for time spent litigating her unsuccessful claims.[7]

With regard to Williams's unsuccessful claims, TSAI calculated, and demonstrated in a detailed eight page exhibit, that Williams's attorneys spent a total of 94.98 hours in pursing her unsuccessful sexual harassment claim, with attorneys' fees for that claim totaling $25,836.89. TSAI further demonstrated that Williams's attorneys spent 18.96 hours solely on issues pertaining to her claims against Dougher, charging $5,181.25 in attorneys' fees for those services. TSAI also calculated 10.42 hours spent solely on Williams's claims against Clark and Rosa, amounting to $2,642.50 in attorneys' fees. In total, TSAI argued that $33,660.64 should be deducted from Williams's claim for attorneys' fees solely on the basis of fees charged for time spent and billed on unsuccessful claims.

TSAI argued for a further reduction in attorneys' fees based on unproductive time spent on Williams's emotional distress claim, which Williams later chose not to pursue. TSAI produced evidence that Williams's attorneys spent 26.91 hours relating to issues regarding Williams's emotional distress claim, amounting to $7,373.50 in attorneys' fees.

TSAI also argued that Williams's request for attorneys' fees should be reduced due to additional, duplicative, unnecessary, or non-productive time charged. According to TSAI's calculations, Williams's attorneys spent 20 hours on unnecessary or duplicative tasks, totaling $6,090.75, in attorneys' fees.

Finally, TSAI asserted Williams's attorneys' fees should be reduced by the time spent preparing for her motion for attorneys' fees. TSAI suggested that Williams's billing of 7.84 hours in preparation for the motion was unreasonable, and that the corresponding $2,131.00 in attorney's fees should be excluded.

In total, TSAI provided exhibits totaling fifteen pages of time entries detailing exactly what TSAI felt should not be charged as attorneys' fees on Williams's successful claim for retaliation. The evidence presented by TSAI demonstrated that $49,255.89 should be deducted from the amount sought by Williams, bringing TSAI's impression of "reasonable" fees to $96,989.61. The evidence presented to the trial court supports a finding that Williams's reasonable attorneys' fees relating solely to her successful retaliation claim is $96,989.61. The trial court's award of only $80,000 in light of this evidence indicates that the amount awarded was arbitrarily arrived at or is so unreasonable as to indicate indifference and a lack of proper judicial consideration.

The trial court was under no obligation to accept the amount of attorneys' fees

---

7. Prior to trial, Williams settled her claims against Dougher, voluntarily dismissed all claims against Clark and Rosa, and dismissed her sexual harassment claim against TSAI.

suggested by either party, and retained discretion in making the final award for attorneys' fees. However, when the court significantly strayed from the detailed calculations presented by the party seeking to reduce the attorneys' fee award, and offered no insight as to how it calculated an additional $17,000 in deductions, which TSAI itself could not find, it abused its discretion. Logic dictates that TSAI, as the party responsible for paying any award of attorneys' fees, would calculate as many deductions as legally possible. Indeed, TSAI appears to have done so with its meticulous calculations and exhibits showing the exact time entries with which it took issue. The uncontradicted evidence before the trial court showed that Williams, as the prevailing party, expended reasonable attorneys' fees in the amount of $96,989.61 litigating her successful claim of retaliation against TSAI. The trial court abused its discretion when it awarded Williams only $80,000 in attorneys' fees.

Williams's first point on cross-appeal is granted.

## II. Trial Court Did Not Err in Awarding Costs.

In her second point in her cross-appeal, Williams asserts the trial court erred in awarding her only $3000 in costs because she was entitled to recover additional costs, and argues that Section 213.111.2 allows a prevailing plaintiff to recover a broader array of expenses and costs than are taxable in other civil actions.

### Standard of Review

The award of costs and expenses is "within the sound discretion of the trial court and should not be reversed absent a showing that the trial court abused its discretion." *Trimble v. Pracna*, 167 S.W.3d 706, 716 (Mo. banc 2005).

### Analysis

In awarding costs, a trial court is limited to awarding only those costs "granted by virtue of express statutory authority." *Multidata Sys. Int'l Corp. v. Zhu*, 107 S.W.3d 334, 337 (Mo.App. E.D. 2003). Two statutory authorities exist in this case for Williams's award of costs. First, Section 514.060 provides that "[i]n all civil actions ... the party prevailing shall recover his costs against the other party, except in those cases in which a different provision is made by law." Section 514.060. Second, as noted *supra* in Williams's first cross-point on appeal, Section 213.111.2 of the MHRA permits the trial court to award "court costs and reasonable attorney fees to the prevailing party." Section 213.111.2. While Section 213.111.2 does not specifically provide as such, Williams argues this Court should adopt the federal court approach to recoverable expenses and allow a prevailing plaintiff under the MHRA to recover most litigation related out-of-pocket expenses actually incurred by the attorney. Williams cites no Missouri precedent mandating a more expansive award of costs. We decline to extend Section 213.111.2 beyond the plain meaning of the statute's language, and find that the trial court did not abuse its discretion in its cost award.

Missouri law expressly provides for the taxing of several specific trial costs in favor of a prevailing party. First, Section 492.590 provides for the taxing of deposition costs and expenses with limitations based on:

(1) The relevancy and probative value of the testimony offered by deponent; (2) The time required in the taking of the deposition; (3) The reasonableness of the charge made by the reporter; (4) The availability of stenographers or shorthand reporters in the area where

the deposition is taken; (5) Charges made by other stenographers or short-hand reporters in the community.

Section 492.590. While Williams claimed deposition costs in excess of $4000, the trial court, within its discretion and presumably based on the factors enumerated in Section 495.590, reduced this request. While we do not attempt to presume the trial court's reasoning, the trial court could have ascertained that certain deposition costs were for witnesses not used at trial, or were not relevant to the trial of Williams's single remaining claim of retaliatory discharge.

Second, Sections 514.060 and 491.280.1 provide for the recovery of witness and subpoena fees as part of an award for costs. Again, while Williams claims $139.88, in these fees, the trial court reasonably could have concluded that Williams was not entitled to the entire amount requested due to witnesses who did not testify at trial.

■ Williams also includes, as part of her Bill of Costs, fees for filing her petition and service of summons, costs for electronic equipment and electronic exhibits used at trial, costs for postage and fax, copy and duplication costs, and parking fees. Williams seeks an award of these costs under Section 213.111.2, in addition to the "standard costs" for depositions and witness and subpoena fees provided under Section 514.060. However, Williams has not provided any judicial authority or statutory basis requiring the award of such expenses. Section 213.111.2 grants the trial court authority to award costs at its discretion, and does not mandate the taxing of any particular costs. The trial court awarded Williams costs provided for under Section 514.060 and did not deny her any costs that would have been allowed in a typical civil suit. Any further award of costs must emanate from Section 213.111.2

of the MHRA, which gives the trial court discretion in awarding costs. While it may be within the discretion of the trial court under Section 213.111.2 to follow the federal approach of awarding costs outside the parameters of Section 514.060, we find nothing in the MHRA that requires a trial court to make such a cost award, or that a trial court abuses its discretion in declining to follow the federal approach. Williams's second point on cross-appeal is denied.

*Conclusion*

With regard to TSAI's appeal, the judgment of the trial court is affirmed. With regard to Williams's cross-appeal, the judgment of the trial court is affirmed with regard to its award of costs. The judgment of the trial court is reversed with regard to its award of attorneys' fees, and is remanded for entry of its judgment and award of attorneys' fees in accordance with this opinion.

GLENN A. NORTON and PATRICIA L. COHEN, JJ., Concur.