Oren G. GAMBLE, Sr., and Debra Lynn Gamble, Appellants,

v.

Jim BROWNING, Dan Cline, Larry McCoy, Sr., Jimmy McCoy, Denis Eckold, Mayor Kay Barnes, Dr. Stacey Daniels–Young, Karl Zobrist and Javier M. Perez and Larry McCoy, Jr., (comprising former member of the Board of Police Commissioners of Kansas City, Missouri), Respondents,

Arthur Brookfield, Beverly Barker–Nix and John Williams, Defendants.

No. WD 67441.

Missouri Court of Appeals, Western District.

Dec. 2, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 27, 2009.

Application for Transfer Denied March 31, 2009.

Joseph Paul Bednar, Jr., Jefferson City, MO, for appellant.

Doug Leyshock and Bart Anton Matanic, Office of Attorney General, Jefferson City, MO, James Franklin Ralls, Jr., Liberty, MO, for respondent.

RONALD R. HOLLIGER, Presiding Judge.

Oren Gamble and his wife appeal a judgment in favor of multiple defendants on their claim for a malicious prosecution against Larry McCoy (McCoy), a police informant, Jim Browning and Dan Cline, both now retired Kansas City, Missouri, police officers, and numerous former and current members of the Kansas City Board of Police Commissioners. The Gambles have dismissed their claims against the police board defendants, and they are not parties on this appeal. The Gambles claim that the trial court made numerous errors in the admission or exclusion of evidence. We find that some of those claims of error were not properly preserved and find that the trial court did not err as to others. We find, however,

that the trial court erred in excluding all portions of a surreptitiously filmed interview with McCoy. Because portions of this interview went directly to the heart of the Gambles' theory of the case and contradicted other statements by McCoy, their exclusion was prejudicial. We, thus, reverse and remand the cause for a new trial.

## Facts and Procedural Background

In 1985, Oren Gamble was charged with burglary based on information provided by Larry McCoy; one year later he entered an *Alford*[1] plea of guilty and was placed on probation. His probation was subsequently revoked, and he was sentenced to fifteen years in the Missouri Department of Corrections. While he was still imprisoned, Judge Kelly Moorhouse set aside his guilty plea under Rule 29.07 on the grounds of manifest injustice. Specifically, the court found that officers Browning and Cline had failed to disclose favorable information concerning Gamble in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[2]

The Gambles then filed this civil action alleging essentially that Gamble had been set up by McCoy and officers Browning and Cline in the 1985 prosecution. Gamble claimed that he had been working as an informant with Browning and Cline, providing information about criminal activity, including stolen property. In October 1985, Gamble told one of the two officers that McCoy wanted to sell him some stolen guns. McCoy was arrested and taken to the East Patrol Station. Larry McCoy's father, grandfather, and uncle were current or former Kansas City police officers.

Shortly after his son's arrest, Larry McCoy, Sr., met with Browning and found out that Oren Gamble was the informant against his son. A few days later, Larry McCoy's uncle met with Browning and Cline to work out a deal. In exchange for dismissal of the gun charges, Larry McCoy agreed to "set up" Gamble. Browning and Cline then transferred McCoy to work with the Special Investigations Division, rather than the Property Crimes Division, to pursue Gamble. In mid November, Gamble called Browning to tell him that McCoy wanted him to help with a burglary. Gamble claimed Browning told him to go along but not to do anything overt. Gamble did not know of Browning and Cline's meetings with Larry McCoy or his relatives. Browning did not tell the investigating officers about his conversation with Gamble. The burglary led to Gamble's conviction in 1986.

In 1988, Gamble filed a Rule 24.035 motion to set aside his guilty plea, asserting that he had been set up by the police. His motion was denied for lack of evidence. In 1988, Gamble filed an action in federal court claiming entrapment but it was dismissed in 1990.

After the hearing before Judge Moorhouse and her order allowing Gamble to withdraw his guilty plea, a special prosecutor declined to pursue the charges, and Gamble was released from prison after serving over five years. Other facts will be discussed as relevant to particular issues raised on appeal.

Before considering the issues the Gambles raise, we first address the claim by Browning and Cline that the judgment should be affirmed on the basis of *res*

---

1. In an Alford plea the defendant does not admit guilt but acknowledges that the government has sufficient evidence to convict. *North Carolina v. Alford,* 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

2. Brady requires the prosecution to turn over all exculpatory evidence to the defense. 373 U.S. at 86–88, 83 S.Ct. 1194.

*judicata* because of the dismissal of the earlier 42 U.S.C. section 1983 action brought by Gamble. We do not properly have that issue before us. Browning and Cline did not file a cross appeal. They contend correctly that the issue of whether a plaintiff has made a submissible case is inherent in every appeal. *Grippe v. Momtazee*, 696 S.W.2d 797, 798 (Mo. banc 1985). It is not necessary for a defendant to cross appeal to raise that issue. Browning and Cline also correctly state that under some circumstances, a non-appealing party may challenge rulings of the trial court in an effort to sustain a judgment in their favor. *Burrous v. Am. Airlines, Inc.*, 639 S.W.2d 263, 267 n. 3 (Mo.App. E.D.1982). They argue this may include the merits underlying a denied motion for summary judgment, citing *State ex rel. Liberty Mutual Insurance Company v. Gum* for support. 904 S.W.2d 447, 451 (Mo.App. W.D.1995). They, thus, ask us to affirm the judgment under Rule 84.14.

■ *Liberty Mutual*, however, does not support their argument. It was not a direct appeal; rather, it was an action in prohibition seeking the review of a summary judgment. *Id. at* 448. It has been long settled in Missouri that there is generally no appeal from the denial of a motion for summary judgment. *Parker v. Wallace*, 431 S.W.2d 136, 137 (Mo.1968).[3] Nor is the denial reviewable on appeal when the actual appeal is from a final judgment. *Hihn v. Hihn*, 235 S.W.3d 64, 67 (Mo.App. E.D.2007). Browning and Cline cite no authority to the contrary.[4]

That lack of authority is perhaps explainable by the reasoning in *Parker:* "Upon that ruling [denying summary judgment], the issues raised in the pleadings are still in the case, and it is upon those issues, when decided and if timely and properly presented, that an appeal lies." 431 S.W.2d at 137–38. So it is with Browning and Cline's affirmative defense of *res judicata.* Even if they could raise the applicability of their affirmative defense without a cross appeal (which we do not decide), they present no record on appeal that it was raised and preserved in a motion for directed verdict. *Carson–Mitchell, Inc. v. Macon Beef Packers, Inc.*, 544 S.W.2d 275, 276 (Mo.App. W.D.1976) (claim that engineering company was barred from recovery because of lack of statutory authorization to practice professional engineering (a legal defense) was not preserved where raised in motion for directed verdict but not raised in JNOV motion).[5] Thus, we proceed to the merits of the direct appeal.

### Standard of Review

The Gambles' first four points each involve the trial court's ruling either admitting or excluding evidence. We will not disturb a trial court's decision to admit or exclude evidence absent an abuse of discretion. *Whelan v. Mo. Pub. Serv., Energy One*, 163 S.W.3d 459, 461 (Mo.App. W.D.2005). The trial court abuses its discretion if its ruling was " 'against the logic of the circumstances before it and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a

---

3. In limited circumstance a party may have the denial of its summary judgment motion reviewed when opposing party's motion for summary judgment is granted. *Dhyne v. State Farm Fire & Cas. Co.,* 188 S.W.3d 454, 456 n. 1 (Mo. banc 2006).

4. Even if the denial were reviewable in this context, we would deny review because

Browning and Cline do not supply a complete record for review. The Legal File contains their motion but not the Gambles' response.

5. Since defendants won here they would only be required to raise in motion for directed verdict.

lack of careful deliberate consideration.'" *Id.* (quoting *Oldaker v. Peters,* 817 S.W.2d 245, 250 (Mo. banc 1991)). We affirm the trial court's evidentiary ruling unless there is a substantial or glaring injustice. *Id.* at 462.

### The Court Erred in Refusing to Admit Portions of January 6 & 20th Videotapes of McCoy Because They Were Not Hearsay or Were Admissions of a Party Opponent

The Gambles offered two videotapes of Larry McCoy into evidence. The first involved McCoy and Gamble's brother and the second involved McCoy, Gamble's brother, and Oren Gamble. The trial court admitted certain portions of the first video, but the Gambles specifically complain of the exclusion of three other portions. The defendants objected that these portions were hearsay, and the trial court sustained that objection. The Gambles argued that they were admissible under the exception for admissions against interest.

#### *January 6 Videotape*

■■■ These three excerpts were excluded from the January 6 videotape:

Excerpt 1: Steve Gamble: So the cops talked you into setting his ass up? McCoy: Fuck, yeah. They did. Big time.

Excerpt 2: McCoy: ... them motherfuckers, they said he'd never find out and somehow he found out. They told me his fucking lawyer—

Excerpt 3: McCoy: ... they told me that he'd never find out and his lawyer would never find out, so evidently something went wrong. Now he's pissed at me.

The defendants all argue that the excerpts were not admissions. Browning and Cline further argue that they were inadmissible because the declarants were available at trial as witnesses. The latter contention is incorrect. Browning and Cline rely upon *Nelson v. Holley,* 623 S.W.2d 604, 606 (Mo.App. W.D.1981). That decision, however, involves a declaration against interest by a non-party. *See id.* Unavailability does not apply to an admission made by a party opponent. *Carpenter v. Davis,* 435 S.W.2d 382, 384 (Mo. banc 1968). It is admissible if made by a party or by one in privity with that party. *Nettie's Flower Garden, Inc. v. SIS, Inc.,* 869 S.W.2d 226, 229 (Mo.App. E.D.1993). The first excerpt was clearly an admission by McCoy and should have been admitted; if it was not admissible against Browning and Cline, they could have sought a limiting instruction, but they did not do so.

We do not resolve the admissibility of the second and third excerpts. The trial court also excluded these two on the basis that the "cops" were not identified as Browning and Cline. If they had been, the excerpts would be admissions of a party opponent. The Gambles argue now on appeal that the statements are admissible as some sort of evidence of a conspiracy, citing *Byers Brothers Real Estate & Insurance Agency, Inc. v. Campbell,* 329 S.W.2d 393, 398 (Mo.App.1959) (admission by one co-conspirator admissible against other co-conspirators if conspiracy shown to exist) but this new theory on appeal violates Rule 84.13 and still does not solve the identification problem. All these matters can be addressed more completely and specifically on retrial.

■■■ The Gambles complain also of the total exclusion of the January 20 videotape. The tape was excluded on the basis that it contained hearsay and was self-serving. The tape consists of numerous statements by Oren Gamble as to what he thought had occurred and McCoy's assent or agreement to those statements. That they were self-serving does not make them

inadmissible. A self-serving statement is "'one made by a party in his own interest at some place and time out of court, and does not include testimony which he gives as a witness at the trial.'" *Brown v. Brown*, 19 S.W.3d 717, 723 (Mo.App. W.D. 2000) (quoting *Gibson v. Smith*, 422 S.W.2d 321, 329 (Mo.1968)). "'The rule excluding self-serving declarations is a part of the hearsay rule.'" *Mitchell v. Robinson*, 360 S.W.2d 673, 677 (Mo.1962) (quoting 31 C.J.S. *Evidence* § 216, p. 952). "A party's self-serving utterances are not admissible unless they fall within some exception to the hearsay rule...." *Stratton v. City of Kansas City*, 337 S.W.2d 927, 933 (Mo.1960).

> The general rule is that declarations of a party favorable to himself which are not part of the *res gestae* are hearsay, self-serving and inadmissible as evidence in his favor. A party cannot make evidence for himself by his own declarations. Such declarations are generally not rendered admissible by the fact that they were made in the presence of ... the other party ... **unless the other party assents to the truth of the declarations.**

*Fallert Tool & Eng'g Co. v. McClain*, 579 S.W.2d 751, 758 (Mo.App. E.D.1979) (emphasis added). These are generally not admissible because the reliability of such comments is suspect. *Id.* The trustworthiness of the declaration is bolstered when the other party assents to the statements.

In the January 20 videotape many of the self-serving statements made by Gamble were given assent by McCoy. Parts of the conversations are irrelevant and others may be hearsay, notwithstanding McCoy's assent, and those need to be evaluated before they are shown to a jury. But portions of the videotape are highly relevant to McCoy's motive in acting the way he did, as well as confirmation of some of Gamble's underlying claims. Again, there may be issues as to whether some of these admissions were admissible against Browning and Cline, but they made no such argument at trial or on appeal.

## Gamble Was Prejudiced by the Evidentiary Rulings

 This does not conclude our review. In order to reverse a judgment for the improper exclusion of evidence as hearsay, a showing that the exclusion materially affected the merits of the case is required. § 512.160.2; Rule 84.13(b). The exclusion of evidence has a material affect on the outcome if its inclusion would have altered the outcome of the case. *Aliff v. Cody*, 26 S.W.3d 309, 321 (Mo.App. W.D.2000).

 McCoy testified that Gamble asked him to commit the burglary. During the videotape, McCoy admitted that "I know you didn't ask me [to commit the burglary]." By excluding this proper evidence, the trial court's ruling allowed McCoy to distort the details of the events of that night, which were material to the decision that the jury had to make. In numerous other respects McCoy made admissions about his and the other officers' involvement in the charges against Gamble. Thus, the trial court's decision to exclude this videotape prejudiced Gamble.

Because the exclusion of the first excerpt of the January 6 tape and the total exclusion of the January 20 videotape was an abuse of discretion and prejudiced Gamble, we reverse and remand for a new trial.

## Other Points

 The Gambles argue that the trial court erred in denying their motion for partial summary judgment because the doctrine of collateral estoppel required it based on Judge Moorhouse's judgment finding manifest injustice. The "[d]enial of

a motion for summary judgment is not subject to appellate review, even when an appeal is taken from a final judgment and not from the denial of a motion for summary judgment." *State ex. rel. Mo. Div. of Transp. v. Sure–Way Transp., Inc.,* 884 S.W.2d 349, 351 (Mo.App. W.D.1994). Our reasoning and explanation for rejecting defendants similar request applies here as well. There are other procedural vehicles for preserving and raising this issue at trial through motions for directed verdict, objections to testimony, and/or jury instructions.

The Gambles, however, cite the Eastern District for the notion that the denial of a partial summary judgment motion is appealable. *Sharpton v. Lofton,* 721 S.W.2d 770, 774 (Mo.App. E.D.1986). The Western District and the Eastern District have both rejected the reasoning of *Sharpton* and have maintained the rule that denials of motions for summary judgment are not final judgments and cannot be appealed. *See Sure–Way Transp., Inc.,* 884 S.W.2d at 351–52; *Hammer v. Waterhouse,* 895 S.W.2d 95, 99 n. 5 (Mo.App. W.D.1995); *Judy v. Ark. Log Homes, Inc.,* 923 S.W.2d 409, 414 (Mo.App. W.D.1996) (finding that, upon review, the Eastern District has not adopted *Sharpton,* has ignored the ruling in subsequent cases, and has relied upon the standard rule against appeals); *Shelter Mut. Ins. Co. v. DeShazo,* 955 S.W.2d 234, 238 (Mo.App. S.D.1997).

Because we do not review the denial of summary judgment motions, the Gambles' fifth point is denied.

In their second point, the Gambles argue that the trial court erred when it

allowed evidence that Oren Gamble received an original SIS following his *Alford* plea and that his probation was subsequently revoked. They argue that the Missouri open records law prevents his probation revocation from being discussed in the trial. *See* §§ 610.100–120.[6] This point is somewhat compound, in that the Gambles rely both on the statute closing the records of Gamble's convictions and related proceedings (Chapter 610), and also argues that the probation revocation was irrelevant to any issue in the case (thus suggesting that the prejudicial effect outweighed the probative value). During deliberations, the jury sent a question highlighting the potential prejudice: "Why was Gamble's parole revoked?"

One argument raised in the briefs is without merit and can be disposed of quickly: the defendants claim that Gamble has waived the protection of the statutes by filing a suit predicated on the very incarceration that is the subject of these closed records. This argument basically analogizes to the waiver of physician-patient privilege that occurs when medical malpractice suits are filed. The same argument was rejected by the Missouri Supreme Court (dealing with a predecessor statute)[7] in *State ex rel. Curtis v. Crow:*

> Section 195.290 does not create a privilege in anyone not to testify. It directs that under certain circumstances the records concerning a prior arrest, prosecution and conviction of an offender are to be expunged. The situation is to be as though those things had not occurred. *McNutt*[8] and the other cases cited by

---

6. All statutory references are to RSMo 2000 and the Cumulative Supplement (2008).

7. The former statute required expungement of records. The current statute merely closes the records to the public. *See Martin v.*

*Schmalz,* 713 S.W.2d 22, 24–25 (Mo.App. E.D.1986).

8. *State ex rel. McNutt v. Keet,* 432 S.W.2d 597 (Mo. banc 1968) (dealing with waiver of physician-patient privilege).

respondent on the issue of waiver of a testimonial privilege do not apply because there is no testimonial privilege to be waived.

580 S.W.2d 753, 758 (Mo. banc 1979).

This language used by the *Crow* court, however, creates a new problem: If we take the assertion that no testimonial privilege exists at face-value, what happens when the parties simply put witnesses on the stand who are familiar with the facts contained in the closed records? The Southern District confronted this question in *State ex rel. Thurman v. Franklin*, 810 S.W.2d 694 (Mo.App. S.D.1991). *Thurman* involved the deposition of a sheriff concerning events recorded in a closed record of arrest. *Id.* at 695. The court there held that the sheriff could be deposed, but only as to his personal recollection of any events related to the litigation, and that the closed records could not be used to refresh the sheriff's recollection of those events. *Id.* at 700.

While the Southern District's approach is consistent with *Crow*'s statement that no actual testimonial privilege exists, it seems to cut against broad policy statements contained in *Crow*. *Crow* did not actually involve the **admissibility** of expunged records; rather, it was a proceeding in prohibition regarding the **discoverability** of material in a prosecutor's file. *Crow*, 580 S.W.2d at 754. In that context, the court noted that the expungement statute was "remedial in nature." *Id.* at 756. The court continued:

[T]he fact that the legislature intended broad rather than limited application of an order to expunge entered thereunder is apparent from the fact that the section specifies that when an offender meets the prerequisites of the statute and obtains an order to expunge, such offender is restored to the status occupied before arrest and conviction. In other words, it provides that the situation then becomes one in which it is as though the arrest, prosecution and conviction had never occurred.

Our conclusion as to the interpretation of the statute intended by the legislature is supported by the statute's additional provision that if *"In response to any inquiry made of him for any purpose"* (emphasis added), the offender does not acknowledge that such arrest, prosecution and conviction occurred, the offender will not be guilty of perjury or making a false statement. This makes it crystal clear that the legislature intended that the prior arrest, prosecution and conviction not be used against the offender.

*Id.* at 757.

Chapter 610 contains a similar provision, establishing that the subject of closed records shall not "be held to be guilty of perjury or otherwise of giving a false statement by reason of his failure to recite or acknowledge such arrest or trial in response to any inquiry made of him." § 610.110. The *Crow* court further noted that allowing the discovery of the material sought in that case could allow the defendant to:

accomplish by indirection that which the order to expunge clearly would prevent it from doing by means of the records of the court itself. Such a limited reading of the statute is not in harmony with the other provisions thereof to which we have made reference. In our judgment, the legislature did not so intend. We conclude and hold that an order to expunge "all official records" and "all recordations or arrest, trial and conviction" requires expunging all reference to the offender in the prosecutor's file as well as in the court files.

580 S.W.2d at 757. Finally, the *Crow* court concluded:

The broad purpose expressed in § 195.290 shows, in our judgment, that the legislature did not contemplate permitting such examination and use of any portion of the prosecutor's file in a case in which an order to expunge has been entered. To interpret the statute in any other way would allow its evident purpose to be circumvented.

*Id.* at 758. It is difficult to reconcile these broad statements with the Southern District's holding in *Thurman*. *Crow* held that the defendant in a civil suit could not compel the discovery of material in a prosecutor's file (material that would not, in a technical sense, be a part of the expunged record). Yet *Thurman* seems to suggest that the same defendant could merely have subpoenaed a witness to testify concerning that same material **at trial.** If you can call such a witness, why can't you use discovery to find out who that witness would be? Particularly when the material that allows you to find such a witness is in the possession of the prosecutor, rather than in the expunged court file?

We need not determine whether we agree with *Thurman* or whether it conflicts with *Crow*. The testimony admitted here was relevant because Gamble opened the door and it was not irrelevant to the case. Gamble opened the door to this issue during his own direct examination when he testified:

Q. As a result of your arrest that night, you went to prison, did you not?

A. Yes, I did.

Q. And you spent over five years in prison. Correct?

A. Yes, sir, I did.

Gamble contends that the evidence should have been excluded because it was irrelevant to the case. At trial the court reasoned that "there is no way to ignore that there is a contributing factor to his damages." At the time the evidence was presented, causes of action were held against the defendants for negligence, malicious prosecution, and false imprisonment. For negligence, the probation revocation for a guilty plea to a different crime was relevant as his contribution to his subsequent imprisonment. For malicious prosecution and false imprisonment, the probation revocation was relevant to the cause of his confinement. Finally, the trial court offered the Gambles a mistrial, noting that they may have a problem since they had proceeded through voir dire and the trial to that point under the assumption that this evidence would not be admitted. The Gambles did not request a mistrial.

We, thus, find no error in the admission of this evidence under the facts and posture in which this case was tried. Those facts and circumstances may vary at the retrial, and the court may then exercise its discretion regarding the admission of evidence and the applicability of *Crow* and *Thurman*.

The Gambles also posit error in the admission of other "bad acts" evidence. The Gambles' point relied on is not clear, but reading the argument section, it is obvious that they are talking about testimony from Browning about a meeting with a man named Anthony Petalino, who was (for undisclosed reasons) in the custody of Raytown police at the time of his meeting with Browning. We do not reach the merits of this issue because we have no proper, timely objection and the record is confusing and unclear as to what specific testimony was allegedly objectionable.

Browning was asked at trial: "How did you come into contact with Anthony Petalino?" No objection was made, but the Gambles' counsel approached the bench and said: "Yeah. Again, I just don't want any attempt to elicit any bad acts. I think

if he wants to lead up to the other conversation with Petalino, that's fine with me." We cannot determine what "other conversation" he's talking about. Then the sidebar becomes confused, as all four attorneys try to figure out what is going on. Everyone gets off-track for a while, discussing the admissibility of Browning's notes about the conversation with Petalino. Finally, three pages later, the court says: "This goes back to the motion in limine which has been granted. As I understand it, Mr. Bednar, you are agreeing that Mr. Leyshock can lead the witness through this small, brief area." The Gambles' counsel agreed, but we cannot tell what he was agreeing to. Maybe this is related to the "other conversation" mentioned earlier. In any case there were no further objections, and his first approach to the bench, if considered an objection, was never ruled. Seven questions later, the testimony about Petalino came in without further objection.

If this issue arises again, proper objections and a complete record can be made.

■ The Gambles' also argue that the trial court erred when it refused to publish to the jury the 2001 court order finding manifest injustice. Browning and Cline filed a motion in limine to exclude the Order from being presented and, in lieu, prepared a stipulation of facts that could be used in its place to avoid prejudice. No ruling on this motion in limine is apparent in the record. The record presents no direct evidence that the Order was excluded prior to trial, other than fleeting references to the fact that the Order was not allowed to be offered to the jury. The details about the apparent grant of the motion in limine are hidden in off the record discussions. The parties' arguments and their actions within the trial appear to support the conclusion that the motion in limine was granted.

■ Assuming the motion was granted, an extensive review of the record shows that at no point during the trial did the Gambles ever attempt to offer the Order into evidence. "Exhibits not offered at trial ... are not properly part of the record on appeal...." *Schubert v. Trailmobile Trailer, L.L.C.,* 111 S.W.3d 897, 906 (Mo.App. S.D.2003). In order to preserve this issue on appeal, the Gambles needed to offer the exhibit at trial, particularly since the discussions and ruling on the motion in limine were made off the record. Neither the transcript nor the legal file offers any information about a grant of the motion in limine. With no attempt to offer the exhibit at trial, the issue was not preserved because we have no evidence of how or why the order was excluded. The Gambles made several claims that their opponents had opened the door to this evidence. But in no case did they attempt to offer the Order into evidence, and, in most of the instances, merely stated that defendants opened the door and then either proceeded to an unrelated issue, failed to present a case for how the door was opened, or stated that he was "not going to get into that right now." Without offering the Order into evidence, the Gambles have not preserved this issue for review.

The case is reversed and remanded for a new trial.

HAROLD L. LOWENSTEIN, Judge, and THOMAS H. NEWTON, Judge, concur.