Oren Gene **GAMBLE**, Sr.,
et al., Appellants,

v.

Jim **BROWNING**, et al., Respondents.

No. **WD 73352.**

Missouri Court of Appeals,
Western District.

June 29, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 31, 2012.

Application for Transfer Denied
Oct. 30, 2012.

Joseph P. Bednar, Jr., Jefferson City, MO and Chad C. Beaver, Kansas City, MO, for appellant.

Doug Leyshock, Jefferson City, MO and James F. Ralls, Jr., Liberty, MO, for respondent.

Before: ALOK AHUJA, P.J., and JAMES M. SMART, JR., JJ. and JAMES E. WELSH, JJ.

ALOK AHUJA, Judge.

Oren Gamble sued Respondents Larry McCoy, a police informant, and Jim Browning and Dan Cline, both now retired Kansas City, Missouri police officers, for malicious prosecution, based on Gamble's conviction for burglary in 1986.[1] Gamble appeals a judgment entered in favor of the Respondents following a jury trial. He claims that the trial court made numerous errors in the admission or exclusion of evidence, and that he is entitled to a new trial. We disagree, and affirm the circuit court's judgment.

### Factual Background

In 1985, Oren Gamble was charged with burglary based on an incident in which he and McCoy were involved. He entered an *Alford* plea of guilty one year later, and was given a suspended imposition of sentence and placed on probation for three years. Gamble's probation was subsequently revoked, and he was sentenced to fifteen years in the Missouri Department of Corrections. After unsuccessful attempts at post-conviction relief in both state and federal court, Judge Kelly Moorhouse of the Circuit Court of Jackson County set aside Gamble's conviction and permitted him to withdraw his guilty plea under Supreme Court Rule 29.07(d) on June 26, 2001. Judge Moorhouse's order found that a manifest injustice had occurred. This conclusion was based in significant part on her finding that the police had failed to disclose, to either the defense or the prosecution, the relationship be-

---

1. Gamble's wife, Debra Lynn Gamble, was also a plaintiff in the trial court, and is an appellant here. For ease of reference, and because none of the issues on appeal require us to differentiate between Mr. and Mrs. Gamble, we refer to the Gambles collectively as "Gamble" throughout this opinion.

tween McCoy, his family members, and the detectives involved in the burglary case, and the deal they had struck with respect to the events underlying Gamble's conviction. Because the special prosecutor assigned to the case advised the court that she did not intend to further pursue the case, Judge Moorhouse's order "order[ed] [Gamble's] immediate release from the Central Missouri Correctional Center where he has been incarcerated on the charge."

Gamble then filed this civil action. He alleged that he had been working as an informant for Browning and Cline in the early 1980's, providing information about criminal activity, including stolen property. In October 1985, Gamble informed one of the two officers that McCoy wanted to sell him some stolen guns. McCoy was arrested and taken to the East Patrol Station. McCoy's father, grandfather, and uncle were current or former Kansas City police officers. According to Gamble, shortly after McCoy's arrest his father met with Browning and found out that Oren Gamble was the informant against his son. A few days later, McCoy's uncle met with Browning and Cline to work out a deal. Gamble alleged that, in exchange for dismissal of the gun charges, McCoy agreed to fabricate charges against Gamble. Browning and Cline transferred McCoy to work with the Special Investigations Division, rather than the Property Crimes Division, to pursue Gamble.

In mid-November 1985, Gamble called Browning to tell him that McCoy wanted him to help with a burglary. Gamble claimed that Browning told him to go along with McCoy on the planned burglary, but to avoid taking any overt action, such as breaking a window. Gamble did not know of Browning and Cline's meetings with McCoy's relatives, or that McCoy was cooperating with Browning and Cline to implicate Gamble.

On November 18, 1985, Gamble was arrested at the scene of the burglary McCoy had instigated, of a Circle K convenience store in Kansas City. Browning did not tell the investigating officers about his relationship with Gamble. As noted above, Gamble was convicted of the burglary.

In the first trial of this civil case, the jury found in favor of the Respondents.[2] On appeal, Gamble argued that the trial court had erred in various evidentiary rulings. Based on the trial court's wholesale exclusion of videotapes containing McCoy's admission of complicity in the plot against Gamble, we reversed and remanded for a new trial. *Gamble v. Browning*, 277 S.W.3d 723 (Mo.App. W.D.2008). In the new trial, the jury again found for the defendants. Gamble again appeals, challenging several of the trial court's evidentiary rulings.

## Standard of Review

The trial court has broad discretion to admit or exclude evidence, and we will affirm the trial court's decision absent a clear abuse of discretion. This standard gives the trial court broad leeway in choosing to admit evidence, and its exercise of discretion will not be disturbed unless it is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration.

*Owens v. ContiGroup Cos.*, 344 S.W.3d 717, 726 (Mo.App. W.D.2011) (citations and internal quotation marks omitted).

2. Gamble originally named members of the Kansas City Board of Police Commissioners as additional defendants. He dismissed his claims against them while the case was on appeal for the first time.

## Analysis

### I.

Gamble's first three Points Relied On challenge the exclusion from evidence of Judge Moorhouse's June 2001 order, which set aside Gamble's conviction and ordered his release from custody. Judge Moorhouse's order found that a manifest injustice had occurred, justifying the setting aside of Gamble's conviction under Rule 29.07(d). In the course of reaching this conclusion, the order made numerous findings which would be helpful to Gamble's litigation of this civil action, including: that Gamble had "rendered valuable service" as an informant for the Kansas City Police Department in 1984 and 1985; that Browning told McCoy that he would not be charged for various offenses if he helped "set-up" Gamble; that Browning and Cline met with McCoy's uncle and father, during which this deal with McCoy was discussed and finalized; that Gamble repeatedly rebuffed McCoy's efforts to involve Gamble in various crimes; that "[o]n November 18, 1985, the night of the burglary, the policy gave Larry McCoy specific instructions to go out with [Gamble] and to find a location to commit a burglary, and to let [Gamble] do the actual break-in in order to set him up"; and that, following Gamble's arrest, Browning misrepresented "that he was not using [Gamble] as his agent the night of the 'burglary' of the Circle K store."

Instead of providing the jury with Judge Moorhouse's order (or with the exhibit prepared by Gamble which recited certain of the order's factual findings), the trial court read to the jury the following "stipulation":

> On June 4th, 2001 the Honorable Kelly J. Moorhouse entered an order finding manifest injustice which permitted Oren G. Gamble, Sr. to withdraw his guilty plea for the November 18, 1985 burglary. This order vacated his conviction and sentence.

As reported in Judge Moorhouse's order the special prosecuting attorney, Bronwyn Werner, dismissed the 1985 burglary charge against Oren G. Gamble, Sr. and that act terminated the criminal prosecution of Oren G. Gamble, Sr. in his favor.[3]

### A.

■ We begin with Gamble's third Point Relied On, which argues that Judge Moorhouse's order was admissible because Browning, Cline and McCoy were collaterally estopped from relitigating the facts found in the order.

Collateral estoppel, or issue preclusion, bars relitigation of issues that were necessarily and unambiguously decided in a prior proceeding. In determining whether collateral estoppel applies, courts must consider whether: (1) the issue decided in the prior case was identical to that in the present action; (2) the prior suit resulted in a final judgment on the merits; (3) the party against whom the doctrine is asserted participated as a party or in privity with a party to the prior adjudication; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue. Unlike *res judicata*, collateral estoppel applies to issues that are being relitigated even though the prior lawsuit raised a different cause of action. Collateral estoppel does not require the identity of claims and may be asserted by strangers to the original action.

---

**3.** It does not appear that Gamble in fact *stipulated to* the use of this statement; however, Gamble does not argue on appeal that the characterization of the statement as a "stipulation" constitutes reversible error.

*Spath v. Norris*, 281 S.W.3d 346, 351 (Mo. App. W.D.2009) (citations and internal quotations marks omitted); *see also Green v. Fred Weber, Inc.*, 254 S.W.3d 874, 884 (Mo. banc 2008) ("Missouri follows the 'narrow use of offensive collateral estoppel. . . .' Under that rule, no party can be bound by a judgment unless she was in privity with the parties to that judgment.' ") (citations omitted); *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 847 (8th Cir.2011) (Missouri law; same).

Gamble cannot satisfy the third element necessary to invoke collateral estoppel, because the Respondents were not in privity with the State in the proceedings which resulted in Judge Moorhouse's order. Therefore, the Respondents were not collaterally estopped from relitigating the facts found in Judge Moorhouse's order.

Under Missouri law, "[p]rivity is not established between two people merely because they both have an interest in proving or disproving the same set of facts." *Steinhoff v. Churchill Truck Lines, Inc.*, 875 S.W.2d 175, 177 (Mo.App. E.D.1994).

> A privy, in the context of collateral estoppel, is one so related by identity of interest with the party to the judgment that such party represented the same legal right. Parties are in privity for collateral estoppel purposes if the interests of the non-party are so closely related to the interests of the party, that

the non-party can be fairly considered to have had his day in court. Whether parties are in privity depends mostly on their relationship to the subject matter of the litigation.

*Mo. Mexican Prods., Inc. v. Dunafon*, 873 S.W.2d 282, 286 (Mo.App. W.D.1994) (citations omitted).

We cannot say that the State represented the Respondents' legal rights in opposing Gamble's Rule 29.07(d) motion. While both the State and the Respondents had an interest in disproving Gamble's framing theory, this alone is not enough to establish privity. The State was representing the interest of the people of Missouri in upholding Gamble's felony conviction, while the Respondents now seek to vindicate their personal reputational and pecuniary interests.[4] Respondents did not control the special prosecutor's litigation of the Rule 29.07(d) proceeding; indeed, they were not even aware of that litigation at the time it was occurring. None of the Respondents testified as witnesses in the Rule 29.07(d) proceeding, and Cline had retired from the Police Department in August 1997, almost four years before Judge Moorhouse's order was entered. Any claim of privity is even more attenuated with respect to McCoy, who was never a law enforcement employee, or otherwise affiliated with the State.[5]

---

**4.** Judge Moorhouse's finding of a manifest injustice was based largely on her conclusion that the State had failed to fulfill its discovery obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose to Gamble the full extent of McCoy's relationship with the police. To the extent the Rule 29.07(d) proceedings concerned alleged *Brady* violations, the special prosecutor may have had little incentive to litigate whether it was the police, or the prosecutors, who were responsible for the nondisclosure, since as a general proposition " 'the individual prosecutor has a duty to learn of any favorable evidence known to *the others*

*acting on the government's behalf* in the case, including the police.' " *State ex rel. Koster v. McElwain*, 340 S.W.3d 221, 251 (Mo.App. W.D.2011) (quoting *State ex rel. Engel v. Dormire*, 304 S.W.3d 120, 127 (Mo. banc 2010)); *see also Kyles v. Whitley*, 514 U.S. 419, 437–38, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). This is an example of the potential divergence between the prosecution's interests in the Rule 29.07(d) proceedings, and Browning and Cline's interests in this case.

**5.** Browning and Cline are represented by the Attorney General's Office in this litigation, and it appears that the State Legal Expense

Although not cited by the parties, numerous cases from other jurisdictions have addressed the question whether law enforcement officers sued in their individual capacities are collaterally estopped by factual findings made in earlier criminal litigation. Those cases hold, with virtual unanimity, that police officers who are later sued in their personal capacities are not in privity with the State. (The decisions most frequently involve officers sued personally under 42 U.S.C. § 1983 for allegedly unlawful searches or seizures; the civil plaintiffs seek to use suppression rulings made in earlier state-court criminal proceedings against the § 1983 defendants.) As the First Circuit explained in *Bilida v. McCleod*, 211 F.3d 166 (1st Cir.2000), "most precedent indicates that individual state officials are not bound, in their individual capacities, by determinations adverse to the state in prior criminal cases. The reason is that the interests and incentives of the individual police or officials are not identical to those of the state, and the officers normally have little control over the conduct of a criminal proceeding." *Id.* at 170–71 (citations and footnote omitted; applying Rhode Island law); *see also, e.g., Walczyk v. Rio,* 496 F.3d 139, 151 n. 13 (2d Cir.2007) (dictum); *Jenkins v. City of N.Y.,* 478 F.3d 76, 85–86 (2d Cir.2007) (New York law); *Hardesty v. Hamburg Twp.,* 461 F.3d 646, 651 (6th Cir.2006) (Michigan law); *McCoy v. Hernandez,* 203 F.3d 371, 374–75 (5th Cir.2000) (Texas law); *State v. Doherty,* 167 P.3d 64, 72 (Alaska 2007) (social worker not collaterally estopped by factual findings in earlier child-in-need-of-aid (CINA) proceeding, despite fact that social worker signed CINA petition, attended entire trial, and testified for four days in proceeding); 18A

C.A. Wright, A.R. Miller & E.H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 4458, at 567–70 (2d ed.2002).

In two decisions applying Missouri law, the United States Court of Appeals for the Eighth Circuit has reached this same result, holding that police officers sued personally for Fourth Amendment violations are not bound by earlier state-court suppression rulings which found that particular searches or seizures were unlawful. *Moore v. City of Desloge, Mo.,* 647 F.3d 841, 847 (8th Cir.2011), *following Duncan v. Clements,* 744 F.2d 48, 51–53 (8th Cir. 1984).

Gamble cites *State v. Robinson,* 835 S.W.2d 303 (Mo. banc 1992), in which the Supreme Court stated that the "prosecutor, and the entire law enforcement community, represent the state." *Id.* at 306. This statement was not made in the context of issue preclusion, however, but instead to explain the prosecution's duty to disclose exculpatory evidence. In addition, *Robinson* stated only that, during a criminal proceeding, prosecutors and law enforcement officers both represent *the interests of the State;* it did not suggest that prosecutors represent *the individual interests of the police officers* who were involved in a particular criminal investigation.

Gamble also cites *Smith v. Sinclair,* 424 F.Supp. 1108 (W.D.Okla.1976), in which the court found that law enforcement officers *who were seeking to use collateral estoppel defensively* were in privity with the State in a prior criminal prosecution:

> [I]t is asserted that the defendants in this action were only witnesses in the criminal proceedings, not parties. This

Fund may be available to indemnify them for any liability imposed upon them in this proceeding. Gamble has not argued that the Attorney General's legal representation, or

any potential indemnification by the Fund, supports a finding of privity, and we therefore do not address the matter further.

argument, though superficially appealing, does not stand under close scrutiny. While a criminal action is brought in the name of the State, all of the law enforcement officers who worked toward the prosecution are, in essence, parties to the action. The litigation is, in a very real sense, between them and the defendant.

*Id.* at 1112 (quoting *Moran v. Mitchell,* 354 F.Supp. 86, 89 (E.D.Va.1973)).

The fact that collateral estoppel was invoked *defensively* in *Smith* and *Moran,* against the criminal defendant/civil plaintiff, is significant. In *Smith* and *Moran,* the party *against whom* collateral estoppel was being asserted was identical in the earlier and later actions. The only question was whether the party *asserting* collateral estoppel was sufficiently involved in the earlier action, under the "mutuality of estoppel" doctrine. Consistent with most other jurisdictions, however, Missouri abandoned the "mutuality of estoppel" rule with respect to the defensive use of collateral estoppel in *Oates v. Safeco Insurance Co. of America,* 583 S.W.2d 713, 719 (Mo. banc 1979). *See also, e.g., James v. Paul,* 49 S.W.3d 678, 685 (Mo. banc 2001). Indeed, although it quotes from *Moran, Smith* itself recognizes that "[t]he federal rule comports with the modern trend and thus it is clear that the requirements of mutuality need not be met for collateral estoppel to be applied in an action presenting a federal question in the courts of the United States." 424 F.Supp. at 1111. Thus, *Smith*'s finding of privity was not necessary to that court's decision. Moreover, the standard applied to determine whether the party *asserting* estoppel was in privity with a party to the earlier action is fundamentally different than the test for determining whether the party *against whom* estoppel is asserted was adequately represented in the prior case. *State v. Doherty,* 167 P.3d at 72–73 (distinguishing

situation where plaintiff seeks to collaterally estop government official, from prior cases where "government employees us[ed] collateral estoppel in a defensive manner to prevent plaintiffs from relitigating issues that had already been unsuccessfully litigated against ... the government entities themselves"); 18 A FEDERAL PRACTICE AND PROCEDURE § 4458, at 567, 570–71 (although courts generally do not apply collateral estoppel to government officials sued in their individual capacity based on earlier litigation involving the government entity itself, "a court may yield to the temptation to avoid a perceived mutuality requirement by finding 'privity' for the advantage of an official when preclusion surely should not apply to the official's disadvantage").

The Respondents were not in privity with the prosecution in the Rule 29.07(d) proceedings. We accordingly reject Gamble's contention that Judge Moorhouse's order was admissible because the Respondents were collaterally estopped from contesting the facts found in that order.

## B.

▉ In his first Point, Gamble argues that the court erred in excluding Judge Moorhouse's order because the order was logically and legally relevant. We disagree.

Gamble invokes the principle that, " 'when the record in another case forms an essential element of a party's claim or defense, the record itself must be introduced in evidence, absent an admission of its contents by the opposing party.' " *Chandler v. Hemeyer,* 49 S.W.3d 786, 791–92 (Mo.App. W.D.2001) (citation omitted). Here, however, the trial court's "stipulation" already informed the jury that the criminal proceedings had been resolved in Gamble's favor, which was an essential

element of his malicious prosecution claim. *See Edwards v. Gerstein*, 237 S.W.3d 580, 582–83 (Mo. banc 2007). Because the order's subsidiary findings do not collaterally estop the Respondents, we fail to see what other "essential element" of Gamble's malicious prosecution claim the order could conceivably be relevant to establishing.[6]

The Eastern District rejected a claim similar to Gamble's in *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854 (Mo. App. E.D.2009). In that retaliatory discharge case, the circuit court admitted evidence of alleged sexual harassment and retaliation claims asserted against the defendant-employer by one of the plaintiff's co-employees. Despite admitting evidence of the other employee's allegations, the trial court excluded the federal-court opinion which granted the employer summary judgment on the other employee's claims. *Id.* at 874. The Eastern District found no abuse of discretion in the exclusion of the federal-court opinion. It noted that, "while it was not permitted to introduce into evidence the federal court's written opinion, [the employer] was permitted, and did present evidence to the jury that [the other employee's] charge of retaliatory discharge was dismissed by the federal court." *Id.* The Court also noted the "seri-

ous implications of asking a lay jury to review and opine on the implications of a legal document containing conclusions of law based upon a shifting burden of proof that is not applicable to the case before them." *Id.*

As in *Williams*, the "stipulation" read by the trial court had already informed the jury that Gamble ultimately prevailed in the criminal proceeding. Given that the Respondents were not bound by the factual findings underlying Judge Moorhouse's order, and given that Judge Moorhouse's order applied legal concepts and standards inapplicable to this case (*e.g.*, the State's discovery obligations in criminal proceedings, the existence of "manifest injustice"), admission of the order would have presented a significant risk of unfair prejudice to the Respondents, without any substantial probative value beyond the fact of Gamble's success in that proceeding (of which the jury was already aware). The trial court did not abuse its discretion in finding that the order was not legally relevant. *See, e.g., Mengwasser v. Anthony Kempker Trucking, Inc.*, 312 S.W.3d 368, 372 (Mo.App. W.D.2010) ("Legal relevance involves a process through which the probative value of the evidence (its usefulness) is weighed against the dangers of unfair

---

6. The cases Gamble cites to support his "essential element" claim are plainly distinguishable. In *Chandler*, the Court held that the party appealing the introduction of the records of a prior judicial proceeding had waived any objection. 49 S.W.3d at 791–92. In *Meiners Co. v. Clayton Greens Nursing Center, Inc.*, 645 S.W.2d 722 (Mo.App. E.D.1982), the Court held that the record of a separate equitable mechanic's lien action was "an essential element of a party's … defense" because the defendant in that case argued that the equitable action involved the same parties and property as the current suit, and that the current suit ·was therefore subject to abatement under § 429.270, RSMo 1978. *Id.* at 723–24. Given that the plaintiff argued that the equitable action "was unrelated to the

issues in this suit," *Id.* at 724, it was obviously incumbent on the defendant to show the precise nature of the issues being litigated in the equitable action. Finally, in *Lindsay v. Evans*, 174 S.W.2d 390 (Mo.App.1943), the Court held that the Missouri Supreme Court's opinion in an earlier related case was relevant, because it established that a malicious-prosecution defendant had filed a subsequent *federal* action—the action which actually formed the basis for the malicious-prosecution claim—without a good-faith basis for doing so, given the issues previously determined by the Supreme Court. *Id.* at 398. Here, Gamble does not contend that the Respondents took any relevant actions following, and with knowledge of, Judge Moorhouse's order.

prejudice, confusion of the issues, misleading the jury, undue delay, waste of time or needless presentation of cumulative evidence (the cost of evidence).") (citation omitted).

We note that the consensus among courts is to exclude judicial opinions because of the risk of undue prejudice.

> Courts are generally hesitant to admit other judicial opinions or statements into evidence, even when relevant, because "judicial findings of fact present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice."

*Cardinal v. Buchnoff*, No. 06CV0072–MMA(BLM), 2010 WL 3339509, at *2 (S.D.Cal. Aug.23, 2010) (quoting *Carter v. Burch*, 34 F.3d 257, 265 (4th Cir.1994)); *see also United States v. Sine*, 493 F.3d 1021, 1034 (9th Cir.2007); *CPC Int'l, Inc. v. Northbrook Excess and Surplus Ins. Co.*, 144 F.3d 35, 45 (1st Cir.1998); *Johnson v. Ford Motor Co.*, 988 F.2d 573, 579–81 (5th Cir.1993); *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1566–70 (Fed.Cir. 1993); *Johnson v. Colt Indus. Operating Corp.*, 797 F.2d 1530, 1533–34 (10th Cir. 1986).

In *U.S. Steel, LLC, v. Tieco, Inc.*, 261 F.3d 1275 (11th Cir.2001), Tieco alleged that U.S. Steel had cooperated with the Alabama Attorney General's Office to bring unfounded state-court criminal charges against Tieco. *Id.* at 1280–81. The state court dismissed the criminal charges, and issued a memorandum which recounted in detail the alleged misconduct of U.S. Steel and the Alabama Attorney General in initiating the criminal proceedings. The federal district court admitted the state-court opinion into evidence. As the Eleventh Circuit dryly noted, the opinion (which had been drafted by Tieco's counsel) "neatly conformed to [Tieco's] allegations, especially with respect to the malicious prosecution, abuse of process, and civil conspiracy counterclaims." *Id.* at 1286. After observing that the opinion was inadmissible hearsay (an issue we need not separately address), the Eleventh Circuit proceeded to find that admission of the opinion was unfairly prejudicial. *Id.* at 1286–88. "The district court abused its discretion in admitting Judge Garrett's opinion. The jury, not Judge Garrett, was charged with making factual findings on [Tieco's] allegations in this case." *Id.* at 1288. Similarly here, the malicious prosecution determination was for the jury to make; admission of Judge Moorhouse's order would have presented a significant danger that the jury would have abdicated its fact-finding role, instead deferring to the judge's findings in the earlier proceeding.

Therefore, even if we assume that Judge Moorhouse's order was not hearsay, and had some limited logical relevance, the trial court did not abuse its discretion in concluding that any limited probative value was substantially outweighed by the danger of unfair prejudice. We reject Gamble's relevance arguments.

### C.

■ In Point II, Gamble argues that Judge Moorhouse's order was admissible to respond to the Respondents' attacks on his credibility. Gamble invokes a family of related doctrines: the rule of completeness, curative admissibility, invited error, and opening the door. We find none of these arguments persuasive.

Gamble contends that the Respondents' introduced multiple post-conviction pleadings he filed, in which he made various allegations against the police, prosecutors, and his own defense counsel. Gamble argues that the effect of this testimony was

to suggest that Gamble had made inconsistent allegations, casting blame on anyone and everyone associated with his criminal conviction, and to suggest that the prosecution, or other parties, were as culpable as the Respondents.

Even if Gamble accurately describes the Respondents' tactics, however, we fail to see how the admission of Judge Moorhouse's order could be considered responsive, and thus admissible under the doctrines he cites. As we have found in § I.A, above, the Respondents are not bound by Judge Moorhouse's factual findings, and those findings therefore cannot be employed to establish the "truth" of particular factual propositions. In addition, we do not follow how Judge Moorhouse's findings—that the Respondents' misconduct had contributed to Gamble's criminal prosecution—would assist Gamble in responding to the claim that he had charged various *other people* with misconduct over the years. Judge Moorhouse did not find anyone else to be culpable—indeed, her order specifically "finds no misconduct on the part of the Jackson County Prosecutor's office," and "finds

that [Gamble's] counsel ... was not ineffective." Those findings are *inconsistent* with the allegations of Gamble's post-conviction pleadings with which he was being confronted; the order would thus seem to hurt, rather than help, his case.[7] In addition, the jury was well aware, based on the circuit court's reading of the "stipulation," that Gamble's overarching claim—that he had been unjustly convicted—had been found to be true in the earlier proceedings.[8]

## II.

In Point IV, Gamble claims that the circuit court erred in allowing the Respondents to elicit testimony concerning irrelevant prior misconduct in which he had engaged, and by allowing Respondents to refer to this testimony in opening statement and closing argument.

Our review of the trial transcript indicates that, in many of the instances about which Gamble complains, he failed to make timely objections to the testimony or statements he now challenges. We will not convict the trial court of reversible error

7. Gamble's briefing is vague as to precisely what inconsistencies from his earlier postconviction pleadings the Respondents sought to exploit. Beyond his allegations against the prosecution, and his own defense counsel, one of the major inconsistencies developed in Gamble's cross-examination was his conflicting claims as to when McCoy told him about the plot. Again, to the extent Judge Moorhouse made a specific finding that Gamble's brother first heard McCoy's admissions in February 2000, that finding would be inconsistent with at least some of Gamble's earlier allegations.

8. Even if Gamble were correct that the Respondents' questioning of him justified the responsive admission of Judge Moorhouse's order, the trial court would nevertheless still have been justified in excluding the order, in its discretion, based on the determination that the order's probative value was outweighed

by the danger of unfair prejudice to the Respondents. As a leading treatise explains,

Since this application of the doctrine of curative admissibility is based on the notion that the jury might be misled if contradictory evidence was excluded, the doctrine should not justify admission of that evidence when it is likely to do more harm in this respect than good. Thus, admissibility of evidence offered on the basis that defendant has opened the door should be evaluated under [Federal] Rule [of Evidence] 403 [, which codifies "legal relevance" principles].

27 C.A. Wright & V.J. Gold, FEDERAL PRACTICE AND PROCEDURE § 6096, at 667 n. 37 (2007); *see also* 21 C.A. Wright & K.W. Graham, Jr., FEDERAL PRACTICE AND PROCEDURE § 5039.1, at 837–38 (2d ed.2005) ("opening the door does not deprive the trial court of the power to exclude evidence coming through it by an exercise of the discretion conferred by Rule 403").

based on the admission of evidence, or the allowance of arguments, to which no objections were made. *See, e.g., McGinnis v. Northland Ready Mix, Inc.,* 344 S.W.3d 804, 816 (Mo.App. W.D.2011); *Collins v. Hertenstein,* 90 S.W.3d 87, 100 (Mo.App. W.D.2002) ("A party's failure to object at trial to testimony, evidence or argument preserves nothing for review on appeal."). In at least two other cases, Gamble's arguments on appeal are materially different from the objections he raised at trial, and his appellate arguments in these two instances are likewise unpreserved. *Carroll v. Kelsey,* 234 S.W.3d 559, 563 (Mo.App. W.D.2007) ("[A] point on appeal must be based upon the theory voiced in the objection at trial and an appellant cannot expand or change on appeal the objection as made.").[9]

■ We are left with three specific instances in which Gamble made relevant, timely objections to evidence or statements regarding his own past misconduct. First, during opening statement, Gamble objected to the statement by Browning's lawyer that "Detective Browning will tell you that in mid-October of 1985 he interviewed a person who had been arrested, whose name was Anthony Petalino. Mr. Petalino disclosed to him information that suggested to Detective Browning that Mr. Gamble was actively involved in criminal acts."

This statement (and the unobjected-to testimony of Browning which the statement promised) was an important part of the Respondents' theory of defense, however: they contended that, after initially showing promise as an informant, Gamble had become less cooperative, and by the Fall of 1985 the detectives were concerned that Gamble was using his relationship with the police to further his own criminal activities, which continued unabated. The trial court did not abuse its discretion by overruling Gamble's objection to this statement.

Second, Gamble timely objected to the reading of a portion of his deposition testimony, in which he acknowledged that, in 1983 when he first contacted Browning, he had moved with his wife and son out to Raytown. Gamble went on to testify that

> I was pretty much trying to get out, get my son into a good area to give him a lot of chances I did not think I had when I grew up. And basically at that time in my life, I was hoping to just get a situation of distancing myself from people that were doing illegal activities and hopefully straighten things out.

Although in this deposition excerpt Gamble states that he was seeking to "distanc[e] [him]self from people that were doing illegal activities," and "straighten

---

9. For example, Gamble's counsel *did* object, on the basis that it sought information concerning prior bad acts, to the question whether Gamble "approach[ed] a Sergeant Gary Van Buskirk and Detective Dennis Trehue and tell them you wanted to be an informant for them sometime in April of '87?" Gamble does not explain how this question improperly sought to elicit evidence of prior misconduct, however. *See, e.g., Hays v. State,* 360 S.W.3d 304, 313 (Mo.App. W.D.2012) ("A witness's vague references do not constitute clear evidence associating defendant with other crimes."); *State v. Hitchcock,* 329 S.W.3d 741, 748 (Mo.App. S.D.2011) (defendant did not demonstrate with specificity that his wife feeling "dominated and controlled" by him was a reference to his prior misconduct). Gamble did *not* object to the following question (about which he does complain on appeal), which asked whether he told the officers "that [he] had been active in conducting criminal activity and had committed a maximum of as many as 150 criminal offenses in the period of a year." Similarly, although Gamble repeatedly objected to the admission of *Browning's report* concerning a conversation with Anthony Petalino in which Petalino implicated Gamble in criminal activity, that objection was sustained; Gamble did *not* separately object to Browning's *live testimony* on the same subject, which was admitted.

[unspecified] things out," there is no specific reference in this testimony to any illegal, immoral, or otherwise improper actions by Gamble himself; we fail to see how the trial court erred in overruling his objection to this relatively innocuous deposition excerpt. *Cf. State v. Turner*, 242 S.W.3d 770, 777 (Mo.App. S.D.2008) (defendant did not demonstrate with specificity that gang membership was a bad act; "[t]o violate the rule prohibiting evidence of other crimes or misconduct by the accused, the evidence must show the accused committed, was accused of, was convicted of, or was definitely associated with, the other crimes or misconduct." (citation and quotation marks omitted)).

■ Finally, Gamble objected to testimony concerning an incident in which he identified himself to a Wichita, Kansas law enforcement officer using a false name and identification, and continued to identify himself by the false name even after being convicted of a municipal ordinance violation. As an initial matter, we note that Gamble's counsel did not object when Gamble was asked whether "there was a period of time—maybe it still exists—that you had a fake ID in the name of Vernon Gibson." Further, "[w]hen a person, regardless of whether a party, is being questioned on the witness stand, then long-standing Missouri law holds that the person may be asked about specific instances of his or her own conduct that speak to his or her own character for truth or veracity, even where the issue inquired about is not material to the substantive issues in the case." *Mitchell v. Kardesch*, 313 S.W.3d 667, 677 (Mo. banc 2010). Gamble's use of false identification and a false identity is certainly relevant to his truthfulness.

■ We recognize that despite the general rule permitting the admission of evidence of prior conduct reflecting on a witness' veracity, "the admission of such evidence is subject to the trial court's discretion in limiting or excluding such evidence when its probative value is outweighed by its prejudicial effect." *State v. Winfrey*, 337 S.W.3d 1, 10 (Mo. banc 2011). Moreover, the Supreme Court has acknowledged that "the fact that a person has told a lie on an irrelevant issue that is remote in time or subject may make the ... evidence of little value in determining the witness' character for truth and veracity." *Mitchell*, 313 S.W.3d at 681–82. Here, however, beyond arguing that the evidence was categorically inadmissible—a proposition we reject—Gamble makes no argument that the trial court abused its discretion in permitting the testimony in light of the timing or circumstances of the Wichita incident. Although an argument could potentially be constructed that the evidence was not legally relevant because its probative value was outweighed by the danger of unfair prejudice, we will not assert such an argument for Gamble, where he has failed to make one himself.

Finally, Gamble argues that he was unfairly surprised by Respondents' introduction of the evidence of misconduct. Our review of the record reveals, however, that Gamble made no objection during trial on this basis. This alone defeats his claim.

> Our courts have uniformly ruled that if a litigant is surprised by something that occurs during the trial he must call the attention of the court to it at the time it occurs and request some corrective action or ruling. He cannot stand mute and proceed with the trial, gambling on his chances for a favorable judgment, and then raise the question of surprise for the first time when the judgment rendered is unfavorable to him. If he gambles on the judgment in this way, he must abide by the result. This is the course pursued by Keyte in this case and the trial court did not have the right

to exempt him from the consequences of his gamble.

*Keyte v. Parrish,* 399 S.W.2d 601, 605 (Mo. App.1966); *see also, e.g., Ark–Mo. Power Co. v. Haines,* 592 S.W.2d 883, 885 (Mo. App. S.D.1980).

## III.

In Point V, Gamble argues that the circuit court erred in excluding the full versions of the two videotapes in which McCoy admitted his role in setting up Gamble on bogus charges.

The admissibility of these videotapes was an issue in the prior appeal. In the first trial, the court admitted portions of the first video, but had excluded the remainder, and all of the second tape. Gamble argued that it was an abuse of discretion to exclude three other portions of the first tape, in all of which McCoy referred to his involvement in setting up Gamble in cooperation with the police, as well as to exclude the entire second tape. *Gamble v. Browning,* 277 S.W.3d 723, 728 (Mo.App. W.D.2008). We held that it was an abuse of discretion not to admit an excerpt from the first tape where McCoy clearly admitted culpability, and that the evidence was admissible against all parties because Browning and Cline did not seek a limiting instruction. *Id.* We did not rule on the admissibility of two other excerpts from the first tape because they were vague as to the identity of the police officers with whom McCoy was working. *Id.*

As to the second tape, we found that the trial court had erred in excluding the entire tape on the basis that it contained hearsay and was self-serving. *Id.* at 728–29. While we observed that the general rule is that self-serving statements are hearsay, we noted that the trustworthiness of such statements is bolstered when the other party assents. *Id.* at 729. Because McCoy had assented to many of Gamble's self-serving statements, we found that it was error to exclude the whole tape, though we acknowledged that many parts of the tape were irrelevant and other parts might be hearsay. *Id.* Again, Browning and Cline failed to argue that these statements were only admissible against McCoy. *Id.* We concluded that the error in the exclusion of one excerpt in the first videotape, and in the exclusion of the entire second videotape, were prejudicial and required that Gamble be afforded a new trial. *Id.*

Unlike in the first trial, in the second trial the circuit court allowed certain portions of the second tape to be played for the jury. Furthermore, Gamble has not identified in his Brief the portions of the first videotape that he contends were erroneously excluded. Gamble also failed to make a specific offer of proof at trial detailing why the evidence was relevant and admissible. *See Chamberlain v. Dir. of Revenue,* 342 S.W.3d 334, 339 (Mo. App. S.D.2011) ("Generally, in order to preserve an issue of exclusion of evidence for appeal, *a definite and specific offer of proof* demonstrating why the evidence is relevant and admissible must be made at trial.") (emphasis added) (citation and quotation marks omitted). Because the excerpts Gamble contends were erroneously excluded have not been identified on appeal, or properly preserved at trial, we cannot say that the circuit court abused its discretion.[10]

---

10. Gamble argues that the tapes include statements by McCoy, relating statements by Browning and Cline, which constitute admissions against interest by Browning and Cline. While McCoy may have been permitted to *testify* to these purported admissions, his statements on the videotapes were not testimony.

■ Gamble also argues that the appearance of authenticity of the videotapes was lessened because excerpting the tapes led to a choppy, disjointed viewing experience. However, Gamble did not ask at trial for any remedy for this disjointedness. Moreover, we will not hold that presentation of an edited videotape is prejudicial simply because of the fact of editing; were that the case, courts would not be able to exclude portions of tapes which were plainly irrelevant or otherwise inadmissible, but instead would be forced to admit or exclude them in their entirety. Finally, our previous decision plainly contemplated that the tapes would be presented to the jury in an edited form, since we noted that "parts of the conversations are irrelevant and others may be hearsay ... and those need to be evaluated before they are shown to a jury." *Gamble,* 277 S.W.3d at 729.

■ Lastly, Gamble argues that the entire videotapes should have been admitted to rebut Respondents' arguments that the videos were staged. Many of the excluded portions of the tapes apparently showed the participants engaged in everyday behavior, such as leaving the room to use the bathroom, smoking cigarettes, or discussing unrelated subjects. Gamble contends these excerpts would have shown that the persons depicted were acting naturally, and thus that the videotapes were not fabricated. Although we acknowledge that showing the entire videotapes may have had *some* limited tendency to rebut a contention that they were fabricated, we do not believe this tenuous connection required the trial court to play the entirety of the videotapes to the jury, given their length, and the fact that they included material which was plainly irrelevant. Gamble did not request more limited relief, such as having the court advise the jury that the tapes had been edited to exclude irrelevant matter. The circuit court did not abuse its discretion in proceeding as it did.

## IV.

Finally, in Point VI Gamble argues that the trial court erred in denying his new-trial motion because of the cumulative prejudicial effect of the errors alleged in his other Points. Because we have not found error in any of the other Points, there was no prejudicial effect to be cumulated; Point VI is accordingly denied. *Goltz v. Masten,* 333 S.W.3d 522, 526 (Mo. App. W.D.2011) (citing *Ziolkowski v. Heartland Reg'l Med. Ctr.,* 317 S.W.3d 212, 223–24 (Mo.App. W.D.2010)).

## Conclusion

The circuit court's judgment is affirmed.

All concur.